IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF LOUISIANA, THROUGH | ) | |
| THE LOUISIANA DEPARTMENT OF | ) | |
| ENVIRONMENTAL QUALITY AND | ) | |
| LOUISIANA ATTORNEY GENERAL | ) | |
| LIZ MURRILL | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| SMITTY'S SUPPLY, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United

States and acting on behalf of the United States Environmental Protection Agency ("EPA"), and

the State of Louisiana, through the Louisiana Department of Environmental Quality ("LDEQ"),

and by and through the authority of the Louisiana Attorney General Liz Murrill (collectively "the

State"), file this Complaint and allege as follows:

**NATURE OF THE ACTION**

1.      The United States and the State bring this civil action against Smitty's Supply, Inc.

("Defendant"), seeking civil penalties and injunctive relief for violations of the Clean Water Act,

33 U.S.C. § 1251 *et seq*., and the Louisiana Environmental Quality Act ("LEQA"), Louisiana

Revised Statutes 30:2001 *et seq*., the regulations promulgated pursuant to those statutes, and the permits that incorporate those requirements.

2.     This action arises from Defendant's multiple failures to adhere to its regulatory and statutory obligations. On August 22, 2025, an explosion and fire occurred at Defendant's lubricant oil manufacturing facility in Roseland, Tangipahoa Parish, Louisiana (the "Facility"). The fire engulfed above-ground storage tanks and other areas of the Facility that stored oil and chemical products. The fire burned for approximately two weeks until it was fully extinguished. As a result of this catastrophic event, oil and other pollutants flowed from the Facility into adjacent water bodies and the Tangipahoa River. Once in the river, the pollutants traveled approximately 47 miles downstream. EPA and LDEQ, along with other agencies, responded to the incident to reduce risks to public health and the environment. Following the incident, EPA reviewed Defendant's required oil spill prevention and response plans. EPA determined that those plans were insufficient. Additionally, for years prior to the incident, Defendant repeatedly failed to comply with its Louisiana Pollutant Discharge Elimination System permit, in violation of the Clean Water Act, and Louisiana Revised Statute ("La. R.S.") 30:2075 and La. R.S. 30:2076. Plaintiffs ask this Court to hold Defendant accountable for unlawfully polluting the Nation's and the State's waters, and to require Defendant to take all appropriate measures to prevent future spills or discharges.

3.     The United States seeks relief related to Defendant's unauthorized discharge associated with the incident described above, Defendant's inadequate spill prevention and response plans, and Defendant's numerous permit violations. The State presents analogous state law claims, as well as state-only claims for unauthorized discharges and certain permit violations.

## JURISDICTION, VENUE, AND AUTHORITY

4.     This Court has jurisdiction over the subject matter pursuant to Clean Water Act Sections 309(b) and (d), 33 U.S.C. § 1319(b) and (d); Sections 311(b)(7)(E) and (n), 33 U.S.C. §

1321(b)(7)(E) and (n); Section 311(e)(2), 33 U.S.C. § 1321(e)(2); and 28 U.S.C. §§ 1331, 1345, and 1355.

5.     This Court has personal jurisdiction over the Defendant, which does business in the State of Louisiana and in this judicial district.

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over the State's claims under the LEQA because those claims are so related to the claims alleged by the United States that they form part of the same case or controversy.

7.     Venue is proper in the Eastern District of Louisiana pursuant to Sections 309(b), 311(b)(7)(E) and (e)(2) of the Clean Water Act, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(e)(2), and 28 U.S.C. §§ 1391 and 1395, and because the Facility is located in this District, where the alleged violations occurred or are occurring.

8.     Authority to bring this action is vested in the United States Department of Justice pursuant to Section 506 of the Clean Water Act, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519. Authority to bring this civil action is vested in the State of Louisiana, through the LDEQ and by and with concurrence of the Attorney General of the State of Louisiana under La. R.S. 36:231, at the request of the Secretary of the LDEQ pursuant to La. R.S. 30:2025, La. R.S. 30:2050.7, and Louisiana Administrative Code ("LAC") 33:IX.507.

## NOTICE

9.     Notice of commencement of this action has been given to the State of Louisiana, pursuant to 33 U.S.C. § 1319(b). The State is a Co-Plaintiff in this case.

## DEFENDANT

10.     Defendant is a corporation engaged in the business of manufacturing and blending, storing, and distributing petroleum products, lubricating oil, and grease.

11.    Defendant maintains its principal place of business in Louisiana, and at all times relevant to this Complaint, has conducted business in Louisiana.

12.    At all relevant times, Defendant owned and operated the Facility that is the subject of this Complaint.

13.    Defendant is a "person" within the meaning of Sections 311(a)(7) and 502(5) of the Clean Water Act, 33 U.S.C. §§ 1321(a)(7), 1362(5) and La. R.S. 30:2004(11).

## STATUTORY AND REGULATORY BACKGROUND

### I.    Clean Water Act

14.    The objective of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

**A.    Clean Water Act Section 301: Prohibition of Discharges of Pollutants**

15.    To achieve the objective of the Clean Water Act, Section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person," except as otherwise authorized by the Clean Water Act.

16.    A "person" means "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

17.    The meaning of "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

18.    The meaning of "discharge of a pollutant" for purposes of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). The term "discharge" when used without

qualification includes a "discharge of a pollutant" and "a discharge of pollutants." 33 U.S.C. § 1362(16).

19.    "Navigable waters" means "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). In turn, "waters of the United States" means, *inter alia*, traditionally navigable waters and waters that are relatively permanent, standing, or continuously flowing bodies of water that are connected to traditionally navigable waters.

20.    "Point source" means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

21.    Pursuant to Section 402(a) of the Clean Water Act, EPA or an authorized state may issue a National Pollutant Discharge Elimination System ("NPDES") permit that authorizes the discharge of pollutants to waters of the United States, upon the condition that such discharge will meet all applicable requirements of the Clean Water Act and such other conditions as the permitting authority determines necessary to carry out the provisions of the Clean Water Act. 33 U.S.C. § 1342(a).

22.    NPDES permits include conditions and limitations, including effluent limitations, to ensure compliance with the requirements of the Clean Water Act. 33 U.S.C. § 1342(a)(2); *see also* 33 U.S.C. § 1311.

23.    "Effluent limitation" means a restriction on the quantity, rate, and concentration of chemical, physical, biological, and other constituents that are discharged from point sources into navigable waters. 33 U.S.C. § 1362(11).

24.     Any person who discharges storm water associated with industrial activity must have an NPDES permit. 33 U.S.C. §§ 1311(a) and 1342(p).

25.     "Storm water discharge associated with industrial activity" includes "discharge[s] from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant." 40 C.F.R. § 122.26(b)(14).

26.     EPA authorized Louisiana to administer Louisiana's own NPDES permit program—the Louisiana Pollutant Discharge Elimination System ("LPDES")—on August 27, 1996, 61 Fed. Reg. 47,932 (Sept. 11, 1996). LDEQ administers its LPDES program pursuant to Title 33, Part IX, Subpart 2, of the Louisiana Administrative Code. "In accordance with 40 C.F.R. § 123.1(i), all requirements in LAC 33:IX.Chapters 5–21 that are within the scope of coverage of the NPDES program shall apply to the LPDES program. Any requirements that are less stringent than the NPDES program requirements shall not apply. Any requirements that are not within the scope of coverage of the NPDES program may only be applied and enforced as state-only requirements." LAC 33:IX.2301.B.

**B.    Clean Water Act Section 311(b): Prohibition of Discharges of Oil and Hazardous Substances**

27.     Section 311(b) of the Clean Water Act prohibits the unauthorized discharge of oil or hazardous substances into or upon the navigable waters of the United States in "such quantities as may be harmful" to public health or welfare or the environment of the United States "as determined by the President." 33 U.S.C. § 1321(b)(3), (4).

28.     The President delegated authority to the Administrator of EPA under Section 311(b)(3) and (b)(4) of the Clean Water Act, 33 U.S.C. § 1321(b)(3), (4), to determine by

regulation the quantities of oil the discharge of which may be harmful. Exec. Order No. 12777, Sec. 8(a), 56 Fed. Reg. 54,757, 54,768 (Oct. 18, 1991).

29.    The Administrator determined that discharges of oil "in such quantities as may be harmful to the public health or welfare or environment of the United States" are discharges of oil that (a) violate applicable water quality standards, or (b) cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines. 33 U.S.C. § 1321(b)(3); 40 C.F.R. § 110.3.

30.    For hazardous substances, the quantities determined to be harmful are those that are in "reportable quantities," as set forth in 40 C.F.R. § 117.3. 40 C.F.R. § 117.1(a).

31.    For purposes of Section 311(b)(3) of the Clean Water Act, "discharge" includes, but is not limited to "any spilling, leaking, pumping, pouring, emitting, emptying or dumping." 33 U.S.C. § 1321(a)(2).

32.    "Oil" means "oil of any kind or in any form, including, but not limited to . . . oil mixed with wastes." 33 U.S.C. § 1321(a)(1); 40 C.F.R. § 112.2.

33.    "Sheen" means an iridescent appearance on the surface of water. 40 C.F.R. § 110.1.

34.    "Sludge" means an aggregate of oil or oil and other matter of any kind in any form other than dredged spoil having a combined specific gravity equivalent to or greater than water. 40 C.F.R. § 110.1.

35.    "Hazardous substance" means any substance designated pursuant to Section 311 (b)(2) of the Clean Water Act and listed in EPA's regulations at 40 C.F.R. Part 116. 33 U.S.C. § 1321(a)(14).

36.     Section 311(b)(7)(A) of the Clean Water Act provides that any "person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil or a hazardous substance is discharged" in violation of Section 311(b)(3) is subject to a civil penalty. 33 U.S.C. § 1321(b)(7)(A).

37.     "Person," as defined by Section 311 of the Clean Water Act, includes an "individual, firm corporation, association, and a partnership." 33 U.S.C. § 1321(a)(7).

38.     "Owner or operator," as defined by Section 311 of the Clean Water Act, means in the case of an onshore facility, "any person owning or operating such onshore facility." 33 U.S.C. § 1321(a)(6).

39.     "Onshore facility," as defined by Section 311 of the Clean Water Act, includes "any facility . . . of any kind located in, on, or under, any land within the United States other than submerged land." 33 U.S.C. § 1321(a)(10).

**C.      Clean Water Act Section 311(e): Threat to Public Health or Welfare of the United States**

40.     Section 311(e) of the Clean Water Act provides the United States authority to address an "imminent and substantial threat to the public health or welfare of the United States . . . because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of [Section 311](b)." 33 U.S.C. § 1321(e).

41.     Section 311(e)(1)(A) of the Clean Water Act authorizes the Attorney General to secure "any relief from any person . . . as may be necessary to abate such endangerment." 33 U.S.C. § 1321(e)(1)(A). District courts have "jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require." 33 U.S.C. § 1321(e)(2).

42.     Enforcement of Section 311 of the Clean Water Act supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251(a), 1321(b)(1).

**D.      Clean Water Act Section 311(j): Oil Spill Prevention and Response**

43.     Section 311(j) of the Clean Water Act directs the President to promulgate regulations relating to oil spill prevention and response. 33 U.S.C. § 1321(j).

44.     The President delegated to the Administrator of EPA the authority to promulgate such regulations under Section 311(j) of the Clean Water Act for discharges from non-transportation-related onshore facilities. Exec. Order No. 11548, Secs. 1(e) & 9, 35 Fed. Reg. 11,677 (July 20, 1970); Exec. Order No. 12777, Sec. 2(d)(1), 56 Fed. Reg. 54,757 (Oct. 18, 1991).

45.     Those regulations, known as the Facility Response Plan and the Spill Prevention, Control, and Countermeasure ("SPCC") regulations, are codified at 40 C.F.R. Part 112.

46.     A "non-transportation-related onshore facility" includes oil storage facilities including all equipment and appurtenances related thereto, as well as fixed bulk plant storage, terminal oil storage facilities, consumer storage, and pumps and drainage systems used in the storage of oil, as set forth in the "Memorandum of Understanding Between the Environmental Protection Agency and the Department of Transportation," 36 Fed. Reg. 24,080 (Dec. 18, 1971), incorporated by reference into 40 C.F.R. § 112.2, and set forth in 40 C.F.R. Part 112, Appendix A.

47.     For the purposes of Section 311(j), the term "discharge" includes "any spilling, leaking, pumping, pouring, emitting, emptying, or dumping of oil." 40 C.F.R. § 112.2.

48.     "Any person who fails or refuses to comply with any regulation issued under subsection (j) shall be subject to a civil penalty[.]" 33 U.S.C. § 1321(b)(7)(C).

E.    **Clean Water Act Section 311(j)(5): Facility Response Plan and Implementing Regulations**

49.    Section 311(j)(5)(A) of the Clean Water Act requires the President to promulgate regulations requiring owners or operators of specified facilities to submit to the President plans for responding to worst case oil discharges and a substantial threat of such discharges. 33 U.S.C. § 1321(j)(5)(A).

50.    Facilities subject to Clean Water Act Section 311(j)(5)(A) requirements include non-transportation-related onshore oil facilities that, because of their location, "could reasonably be expected to cause substantial harm to the environment by discharging oil into or on the navigable waters of the United States or adjoining shorelines" ("substantial harm facilities"). 33 U.S.C. § 1321(j)(5)(C)(iv).

51.    Pursuant to Section 311(j)(5)(A), EPA promulgated Facility Response Plan regulations for non-transportation-related substantial harm facilities, codified at 40 C.F.R. §§ 112.20 and 112.21.

52.    A facility is subject to these regulations if it is classified as a substantial harm facility.

53.    A facility can be a substantial harm facility if it has a total oil storage capacity greater than or equal to 1,000,000 gallons and (a) the facility does not have secondary containment for each above-ground storage area sufficiently large to contain the capacity of the largest above-ground oil storage tank within each storage area plus sufficient freeboard to allow for precipitation or (b) the facility is located at a distance that a discharge from the facility could cause injury to fish and wildlife and sensitive environments. 40 C.F.R. § 112.20(f)(1)(ii)(A), (B).

54.    The Facility Response Plan regulations require substantial harm facilities to, among other things, develop and implement: (a) a Facility Response Plan that details the facility's

10

emergency plans for responding to an oil spill; (b) an oil spill response training program; and (c) a program of oil spill response drills/exercises. 40 C.F.R. §§ 112.20 and 112.21.

55.     The Facility Response Plan must either follow the format contained in 40 C.F.R. Part 112, Appendix F, or contain the elements described in 40 C.F.R. § 112.20(h)(1)–(11). 40 C.F.R. § 112.20(h).

###    F.    Clean Water Act Section 311(j)(1): SPCC Plan and Implementing Regulations

56.     Section 311(j)(1) of the Clean Water Act requires promulgation of regulations to establish procedures and methods to prevent and contain discharges of oil from onshore facilities. 33 U.S.C. § 1321(j)(1)(C).

57.     Pursuant to Section 311(j)(1)(C), EPA promulgated the Spill Prevention, Control, and Countermeasure ("SPCC") regulations for non-transportation-related onshore facilities, codified at 40 C.F.R. Part 112, Subparts A through C. 33 U.S.C. § 1321(j)(1)(C).

58.     The SPCC regulations apply to owners and operators of non-transportation-related onshore facilities engaged in drilling, producing, gathering, storing, processing, refining, transferring, distribution, using, or consuming oil and oil products that, due to their location, could reasonably be expected to discharge oil in quantities that may be harmful (as described 40 C.F.R. § 110) into or upon the navigable waters of the United States. 40 C.F.R. § 112.1(b).

59.     The SPCC regulations apply to facilities with an aggregate above-ground storage capacity greater than 1,320 gallons. 40 C.F.R. § 112.1(d)(2)(ii).

60.     "Onshore facility" means "any facility of any kind located in, on, or under any land within the United States, other than submerged lands." 40 C.F.R. § 112.2.

61.     "Oil" means "oil of any kind or in any form, including, but not limited to . . . oil mixed with wastes." 33 U.S.C. § 1321(a)(1); 40 C.F.R. § 112.2.

62.     To prevent discharges of oil in harmful quantities into navigable waters, the SPCC regulations require an owner and operator of subject onshore facilities to prepare in writing and implement an SPCC Plan. 40 C.F.R. § 112.3.

63.     The SPCC Plan must adhere to certain requirements detailed in the regulations (40 C.F.R. §§ 112.3, 112.7), reflect good engineering practices (40 C.F.R. § 112.7), be certified by a Professional Engineer (40 C.F.R. § 112.3(d)), and be periodically reviewed and amended (40 C.F.R. § 112.5).

64.     Among other things, the SPCC regulations require that owners and operators of subject facilities include information in the SPCC Plan to:

    a.     Address certain measures, such as how to dispose of materials when there is a spill, and countermeasures for discovery, response, and cleanup of a discharge, 40 C.F.R. § 112.7(a);

    b.     Provide certain descriptions, such as the appropriate structures or equipment to prevent a discharge, 40 C.F.R. § 112.7(c);

    c.     Set certain procedures, including, but not limited to, procedures for conducting inspections and tests, training for personnel to prevent discharges of oil, and procedures to prevent discharges during the loading and unloading of trucks and tanks, 40 C.F.R. § 112.7(e), (f), (h);

    d.     Prevent discharge of oil from diked and undiked drainage areas, 40 C.F.R. § 112.8(b); and

    e.     Construct bulk storage containers used to store oil, in such a manner that they are compatible with their contents and have adequate secondary containment and

drainage, as well as, regularly test and inspect the above-ground containers for integrity, 40 C.F.R. § 112.8(c).

65.      Notwithstanding compliance with 40 C.F.R. § 112.3 to prepare and implement a SPCC Plan, whenever an owner or operator's regulated facility has "discharged more than 1,000 U.S. gallons of oil in a single discharge as described in 40 C.F.R. § 112.1(b), or discharged more than 42 U.S. gallons of oil in each of two discharges as described in 40 C.F.R. § 112.1(b), occurring within any twelve month period," the owner or operator must submit certain information to the Regional Administrator of EPA within 60 days from the time the facility becomes subject to this section. 40 C.F.R. § 112.4(a). For purposes of this Complaint, "gallon" or "gallons" refer to U.S. gallon(s).

## II.      **Enforcement of the Clean Water Act**

### A.      **Clean Water Act Section 309: Injunctive Relief and Civil Penalties**

66.      Pursuant to Section 309(a)(3) of the Clean Water Act, if the Administrator of EPA finds that any person is in violation of certain sections of the Clean Water Act (including Section 301), or is in violation of any permit condition or limitation implementing certain sections of the Clean Water Act in a permit issued by a state under Section 402, then the Administrator of EPA shall bring a civil action against that person in accordance with Section 309(b). 33 U.S.C. § 1319(a)(3).

67.      Section 309(b) of the Clean Water Act authorizes the commencement of "a civil action for appropriate relief, including a permanent or temporary injunction," against any person who violates Section 301(a), 33 U.S.C. § 1311(a), or a permit condition or limitation in a permit issued by EPA or an authorized state, pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342. 33 U.S.C. § 1319(b).

68.     Section 309(d) of the Clean Water Act provides that any person who violates Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or violates a permit condition or limitation in a permit issued under Section 402 of the Clean Water Act, 33 U.S.C. § 1342, shall be liable for civil penalties in an amount up to $68,445 per day for each violation that occurred after November 2, 2015, where penalties are assessed on or after January 8, 2025. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**B.      Clean Water Act Section 311: Civil Penalties**

69.     Pursuant to Section 311(b)(7)(A) of the Clean Water Act, each violation of Section 311(b)(3) occurring after November 2, 2015, where penalties are assessed on or after January 8, 2025, is subject to a civil penalty of up to $59,114 per day of violation or up to $2,364 per barrel of oil or unit of reportable quantity of hazardous substances discharged. 33 U.S.C. § 1321(b)(7)(A); 40 C.F.R. § 19.4.

70.     Civil penalties can be increased to a minimum of $236,451 per discharge and up to $7,093 per barrel of oil discharged, pursuant to Section 311(b)(7)(D), if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D); 40 C.F.R. § 19.4.

71.     Pursuant to Section 311(b)(7)(C) of the Clean Water Act, 33 U.S.C. § 1321(b)(7)(C), each violation of a regulation issued under Section 311(j) occurring after November 2, 2015, where penalties are assessed on or after January 8, 2025, is subject to a civil penalty of up to $59,114 per day of violation. 33 U.S.C. § 1321(b)(7)(C); 40 C.F.R. § 19.4.

**III.    <u>The Louisiana Environmental Quality Act and Implementing Regulations</u>**

72.     La. R.S. 30:2071 *et seq.* is known and may be cited as the "Louisiana Water Control Law."

73.     Pursuant to Louisiana Water Control Law, "[t]he legislature finds and declares that the waters of the state of Louisiana are among the state's most important natural resources and their

continued protection and safeguard is of vital concern to the citizens of this state. To insure the proper protection and maintenance of the state's waters, it is necessary to adopt a system to control and regulate the discharge of waste materials, pollutants, and other substances into the waters of the state." La. R.S. 30:2072.

74.    "Waters of the state" means "both the surface and underground waters within the state of Louisiana including all rivers, streams, lakes, groundwaters, and all other water courses and waters within the confines of the state, and all bordering waters and the Gulf of Mexico. However, for purposes of the Louisiana Pollutant Discharge Elimination System, 'waters of the state' means all surface waters within the state of Louisiana and, on the coastline of Louisiana and the Gulf of Mexico, all surface waters extending therefrom three miles into the Gulf of Mexico. For purposes of the Louisiana Pollutant Discharge Elimination System, this includes all surface waters which are subject to the ebb and flow of the tide, lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, natural ponds, impoundments of waters within the state of Louisiana otherwise defined as 'waters of the United States' in 40 CFR 122.2, and tributaries of all such waters. 'Waters of the state' does not include waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of the Clean Water Act, 33 U.S.C. 1251 et seq." La. R.S. 30:2073(6).[1]

75.    "Surface Water" means "all lakes, bays, rivers, streams, springs, ponds, impounding reservoirs, wetlands, swamps, marshes, water sources, drainage systems and other surface water, natural or artificial, public or private within the state or under its jurisdiction that

---

[1] On January 20, 2025, President Trump signed Executive Order 14172, which directed the Secretary of the U.S. Department of Interior to rename the "Gulf of Mexico" to the "Gulf of America." This paragraph refers to the "Gulf of Mexico" as that term is used in Louisiana state statues.

are not a part of a treatment system allowed by state law, regulation, or permit." LAC 33:IX.107; LAC 33:IX.1105.

76.    Pursuant to the Louisiana Water Control Law, "[n]o person shall conduct any activity which results in the discharge of any substance into the waters of the state without the appropriate permit, variance, or license required under the regulations of the department adopted pursuant to [the Louisiana Water Control Law]." La. R.S. 30:2075.

77.    The Louisiana Water Control Law provides that "[n]o person shall discharge or allow to be discharged into any waters of the state: (a) Any waste or any other substance of any kind that will tend to cause water pollution in violation of any rule, order, or regulation; or (b) Any substance, the discharge of which violates any term, condition, or limit imposed by a permit." La. R.S. 30:2076 (A)(1)(a), (b).

78.    The Louisiana Water Control Law provides that "[n]o person shall violate any rule or regulation adopted under [the Louisiana Water Control Law] or the terms of any permit or order issued under authority" of the LEQA. La. R.S. 30:2076(A)(3).

79.    Pursuant to the LPDES Permit regulations, the permittee must comply with all conditions of its permit. Noncompliance with the permit is a violation of the Clean Water Act and the LEQA and is grounds for enforcement action. LAC 33:IX.501.A; LAC 33:IX.2701.A.

80.    Pursuant to the LPDES Permit regulations, the permittee must also retain certain records. LAC 33:IX.2701.J.

81.    Pursuant to the Louisiana Water Pollution Control regulations, "the discharge of any pollutant in quantities exceeding permitted limits or a discharge from a source or at a location not authorized by a permit" is a violation of the LEQA. LAC 33:IX.501.D.

82.     Pursuant to the Louisiana Water Pollution Control regulations, "[e]xcept where specifically exempted elsewhere in these [LAC 33:IX], the general criteria shall apply at all times to the surface waters of the state, whether they are identified in the standards or not. General criteria specifically apply to human activities; they do not apply to naturally occurring conditions." LAC 33:IX.1113.B.

83.     Pursuant to the Louisiana Water Pollution Control regulations, "[t]he waters of the state shall be maintained in an aesthetically attractive condition and shall meet the generally accepted aesthetic qualifications. All waters shall be free from such concentrations of substances attributable to wastewater or other discharges sufficient to:

    a.  settle to form objectionable deposits;

    b.  float as debris, scum, oil, or other matter to form nuisances or to negatively impact the aesthetics;

    c.  result in objectionable color, odor, taste, or turbidity;

    d.  injure, be toxic, or produce demonstrated adverse physiological or behavioral responses in humans, animals, fish, shellfish, wildlife, or plants; or

    e.  produce undesirable or nuisance aquatic life."

LAC 33:IX.1113.B.1.

84.     Pursuant to the Louisiana Water Pollution Control regulations, "[n]o substances shall be present in the waters of the state or the sediments underlying said waters in quantities that alone or in combination will be toxic to human, plant, or animal life or significantly increase health risks due to exposure to the substances or consumption of contaminated fish or other aquatic life. The numeric criteria (LAC 33:IX.1113.C.6) specify allowable concentrations in water for several individual toxic substances to provide protection from the toxic effects of these substances.

17

Requirements for the protection from the toxic effects of other toxic substances not included in the numeric criteria and required under the general criteria are described in LAC 33:IX.1121." LAC 33:IX.1113.B.5.

85.    Pursuant to the Louisiana Water Pollution Control regulations, "[f]ree or floating oil or grease shall not be present in quantities large enough to interfere with the designated water uses, nor shall emulsified oils be present in quantities large enough to interfere with the designated uses." LAC 33:IX.1113.B.6.

## GENERAL ALLEGATIONS

### I.    Defendant's Facility

86.    Defendant is, and was at all times relevant to this Complaint, the owner and operator of the approximately 20-acre Facility located at 63399 U.S. Highway 51 at the intersection of Louisiana Highway 10 in an area north of Roseland, Tangipahoa Parish, Louisiana.

87.    Defendant's business operations at the Facility include manufacturing and blending, storing, and distributing petroleum products, lubricating oil, and grease.

88.    Prior to August 22, 2025, the Facility featured 20 tank farms containing approximately 265 steel or plastic above-ground storage tanks with storage capacities ranging from 2,000 to 504,000 gallons. The Facility also contains plastic totes and 55-gallon drums.

89.    At all times relevant to this Complaint, the Facility had a total onsite storage capacity of greater than 1,000,000 gallons. According to Defendant's publicly available website, the Facility featured 11 million gallons of bulk storage, with 8.7 million gallons of bulk storage tanks onsite. *See* Smitty Supply Inc., *Facilities and Capabilities: Roseland, LA Facility*, https://smittysinc.net/about/#history (last accessed October 10, 2025).

90.    In addition to lubricating oils and petroleum products, various chemicals and hazardous substances were stored at the Facility in containers, tanks, and drums, including but not

limited to the following: hydrogen fluoride, radionuclide (Americium), 35% hydrogen peroxide (hydroperoxide), naphthalene, xylene, ethylene glycol, and phosphoric acid.

91.     The Facility is equipped with rail and truck access. Tank truck loading and unloading activities were conducted throughout the Facility, and above-ground storage tanks are equipped with piping and pumps to allow for direct tank truck loading. The rail spur loading and unloading area is adjacent to the Facility, across Highway 51. Defendant pumped products from rail cars to piping and then to tank farms. Defendant also pumped products directly to tank trucks. Products were packaged at various locations in the warehouse area of the Facility and distributed by truck trailers.

92.     According to the Facility's LPDES permit, the Facility has discharge outfalls along the Facility and the rail spur, which are designated as Outfalls 001 through 008. The Facility also features three internal outfalls, designated as Internal Outfalls 102, 105, and 205. The Outfalls are used to discharge wastewater and stormwater, or a combination thereof, from the Facility.

93.     Commercial and residential areas are located near the Facility. The nearest residential area is situated approximately a half mile west of the Facility.

94.     The Tangipahoa River is located approximately a half mile east of the Facility.

95.     At all times relevant to this Complaint, the Facility has been subject to Sections 301, 311, and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1321, and 1342, and subject to the LEQA and LAC 33:IX.

**II.     August 22, 2025, Incident and Discharge of Oil and Hazardous Substances**

96.     On or about August 22, 2025, an explosion and resulting fire occurred at Defendant's Facility. The fire continued to burn for over two weeks, until it was fully extinguished

on or about September 7, 2025. The explosion and fire that occurred at the Facility are herein referred to as the "Incident."

97.    Local law enforcement captured images of the Incident as it unfolded:



*Photo credited to John Gardner of the Tangipahoa Parish Sheriff's Office.*

98.    Due to the Incident, a large, black plume of smoke and soot emanated from the Facility and drifted into surrounding industrial and residential areas.

99.    Local authorities issued a one-mile radius evacuation of the area surrounding Defendant's Facility. The evacuation order impacted approximately 800 residents. On August 25, 2025, the evacuation area was reduced to the immediate area surrounding the Facility.

100.    Rain showers also occurred while the Incident was ongoing, which caused rainfall contaminated with soot to stain nearby cars and homes.

101.    Defendant initiated firefighting and response efforts on August 22, 2025.

102.    The same day, EPA arrived on-scene to respond to the Incident and to oversee Defendant's response efforts with state and local authorities, including LDEQ. EPA also performed area-wide air monitoring.

103.    On August 24, 2025, Defendant ceased firefighting efforts, and EPA took over as the lead agency to conduct the emergency response. EPA coordinated its response and firefighting efforts with other agencies, including LDEQ.

104.    On October 15, 2025, EPA transitioned management of the onsite response back to Defendant under EPA and LDEQ oversight. As of the date of this Complaint, EPA and LDEQ continue to conduct offsite emergency response efforts, with LDEQ leading the response.

105.    The Incident damaged or destroyed Facility equipment and numerous above-ground storage tanks that contained oil and a variety of other products.

106.    Some of the Facility's warehouses, where additional products and chemicals were stored, were also damaged during the Incident.

107.    During the Incident, firefighting water and foam were applied throughout the Facility to extinguish the fire.

108.    Firefighting wastewater and foam mixed with oil products that were present onsite.

109.    Subject to a reasonable opportunity for investigation and discovery, firefighting wastewater/foam and oil also mixed with hazardous substances that were present onsite.

110.    As a result of the Incident, a mixture of oil, firefighting wastewater and foam, and other pollutants discharged from the Facility.

111.    Subject to a reasonable opportunity for investigation and discovery, hazardous substances were among the discharged materials.

112.    The discharged materials traveled from the Facility through a series of conveyances, including storm water drainage channels, and into the Tangipahoa River. The materials entered the Tangipahoa River through at least four separate points of entry.

113.    The Tangipahoa River is a perennial, navigable-in-fact waterway that connects to Lake Pontchartrain. Lake Pontchartrain flows into the Gulf of America.

114.    After reaching the Tangipahoa River, the discharged materials traveled approximately 47 miles downstream towards Lake Pontchartrain.

115.    Oil or hazardous substances discharged from the Facility were present in quantities that caused a sheen on the surface of the Tangipahoa River.

116.    LDEQ personnel captured images of discharged materials in the river:



*Photo taken at Lee's Landing Marina; credited to Adrienne Gossman of LDEQ*

117.    As part of EPA's response to the discharge, the agency deployed vacuum trucks and skimmers to collect and dispose of discharged materials, including oil, recovered from the Facility, nearby ponds and drainage channels, and the Tangipahoa River.

118.    Response personnel also deployed sorbent booms and other containment materials to trap and collect oil and other materials discharged into the Tangipahoa River.

119.    As of the date of this Complaint, an estimated 11 million gallons of materials, including oil, have been collected from the Facility, nearby ponds and drainage channels, and the Tangipahoa River.

120.    Subject to a reasonable opportunity for investigation and discovery, the discharged materials collected from the Tangipahoa River also include hazardous substances.

121.    As of the date of this Complaint, oil and hazardous substances remain at the Facility on the ground and in tanks, drums, totes, and other containers, many of which were damaged by the Incident.

122.    The oil and hazardous substances that remain onsite at the Facility pose a threat of future discharge.

**III.    EPA's Review of Defendant's Facility Response Plan and SPCC Plan for the Facility**

123.    Defendant is subject to the Facility Response Plan and SPCC regulations set forth in 40 C.F.R. Part 112.

124.    On October 1, 2025, EPA requested a copy of Defendant's Facility Response Plan required by 40 C.F.R. Part 112.

125.    Defendant provided EPA a copy of the Facility's Emergency Response Plan.

126.     Upon review by EPA, the Emergency Response Plan did not contain all of the required elements for a Facility Response Plan in 40 C.F.R. § 112.20. The plan also did not reference the Facility Response Plan regulations.

127.     On October 7, 2025, EPA reviewed and inspected Defendant's SPCC Plan dated April 2023.

128.     EPA determined that Defendant failed to develop an adequate SPCC Plan for the Facility for several reasons, including, but not limited to, the following:

a.     Defendant failed to include in its SPCC Plan all statements required by 40 C.F.R. § 112.3(d)(1) for the Professional Engineer certification.

b.     Defendant failed to document in its SPCC Plan its five-year plan review and evaluation. 40 C.F.R. § 112.5(b)(1).

c.     Defendant failed to include in its SPCC Plan discharge prevention measures including procedures for routine handling of products (loading, unloading, and facility transfers, etc.). 40 C.F.R. § 112.7(a)(3)(ii).

d.     Defendant failed to include in its SPCC Plan countermeasures for discharge discovery, response, and cleanup (both for the Facility's and contractor's resources). 40 C.F.R. § 112.7(a)(3)(iv).

e.     Defendant failed to include in its SPCC Plan methods of disposal of recovered materials in accordance with applicable legal requirements. 40 C.F.R. §112.7(a)(3)(v).

f.     Defendant failed to organize portions of the SPCC Plan describing procedures to be used when a discharge occurs so that the procedures are readily usable in an emergency. 40 C.F.R. § 112.7(a)(5).

g.    Defendant failed to include in its SPCC Plan details of the predicted direction of the flow of a spill once outside of containment and the rate of flow of oil for all types of major equipment failures. 40 C.F.R. § 112.7(b).

h.    Defendant failed to include in its SPCC Plan discussion regarding containment for each component of the Facility regulated under the SPCC regulations. 40 C.F.R. § 112.7(c).

i.    Defendant failed to include in its SPCC Plan certain details regarding procedures for tank inspections and tests. 40 C.F.R. § 112.7(e).

j.    Defendant failed to include in its SPCC Plan the required details for the personnel training and oil discharge prevention procedures. 40 C.F.R. § 112.7(f).

k.    Defendant failed to include in its SPCC Plan a detailed discussion about how the Facility meets the regulatory requirements applicable to a tank car and tank truck loading and unloading rack. 40 C.F.R. § 112.7(h).

l.    Defendant failed to include in its SPCC Plan a discussion of the brittle fracture requirements. 40 C.F.R. § 112.7(i).

m.    Defendant failed to state in its SPCC Plan whether the Facility has oil-filled operational equipment. 40 C.F.R. § 112.7(k).

n.    Defendant failed to include in its SPCC Plan all details required by the SPCC regulations regarding Facility drainage in diked and undiked areas. 40 C.F.R. § 112.8(b)(2)–(5).

o.    Defendant failed to include in its SPCC Plan all details required by the SPCC regulations regarding the Facility's bulk containment, including "containment

compatibility and secondary containment plus freeboard" and an explanation for how the Facility prevents the overfilling of tanks. 40 C.F.R. § 112.8(c)(1)–(3), (6), (8), and (11).

      p.      Defendant failed to include in its SPCC Plan all details required by the SPCC regulations regarding Facility transfer operations, pumping, and processes. 40 C.F.R. § 112.8(d)(1), (3)–(5).

## IV.   **LDEQ's Review of Defendant's Compliance with its LPDES Permit**

129.    LDEQ issued Defendant LPDES Permit LA0127154 on September 25, 2018, with an effective date of November 1, 2018, and an expiration date of October 31, 2023. LDEQ received a permit modification request on or about November 15, 2021, and LPDES Permit LA0127154 has been administratively continued.

130.    At all times relevant to this Complaint, Defendant operated the Facility under its LPDES Permit LA0127154. The Facility's LPDES Permit includes effluent and stormwater discharge limitations and requires Defendant to submit Discharge Monitoring Reports. The LPDES Permit also requires that Defendant prepare, implement, and maintain a Storm Water Pollution Prevention Plan.

131.    Subject to the Facility's LPDES Permit requirements, Defendant is permitted to discharge the following:

      a.  Treated sanitary effluent from Outfall 001;

      b.  Treated sanitary effluent from Internal Outfall 102 comingled with stormwater runoff from Outfall 002;

      c.  Treated sanitary effluent from Outfall 003;

      d.  Storm water runoff from Outfall 004;

e.    Treated sanitary effluent from Internal Outfalls 105 and 205 comingled with stormwater runoff from Outfall 005;

f.    Storm water runoff from Outfall 006;

g.    Utility wastewater from boiler blowdown from Outfall 007; and

h.    Storm water runoff from Outfall 008.

132.    Outfalls 002, 004, 005, and 006 discharge from the Facility into local drainage channels and then to the Tangipahoa River. Outfalls 001, 003, 007, and 008 discharge via an effluent pipe, then to local drainage and into the Tangipahoa River.

133.    Based on Defendant's self-reported Discharge Monitoring Reports and other records reviewed by LDEQ, Defendant failed to comply with its LPDES Permit as follows:

a.    Between May 2022 and August 2025, Defendant reported 230 effluent limitation exceedances for Biochemical Oxygen Demand ("BOD"), Total Organic Carbon ("TOC"), Chemical Oxygen Demand ("COD"), Total Suspended Solids ("TSS"), pH, oil and grease, and fecal coliform (see Appendix 1, Table 1);

b.    A sheen was present at Outfalls 002, 004, 005, 006, and 008 (see Appendix 1, Table 2);

c.    Defendant failed to conduct daily visual observations of Outfalls 002, 004, 005, 006, and 008 on weekends and some holidays from May 2022 through at least April 2025;

d.    Defendant failed to maintain records of daily visual observations for Outfalls 002, 004, 005, 006, and 008;

e.    Defendant failed to submit letters of noncompliance for the days on which a sheen was observed at Outfalls 002, 004, 005, 006, and 008; and

    f.    Defendant allowed the discharge of oil, oily materials, or dye (see Appendix 1, Table 3).

134.    Defendant's violations of its LPDES permit are violations of the Clean Water Act and the LEQA.

## CLEAN WATER ACT CLAIMS

## FIRST CLAIM FOR RELIEF

**Violation of Section 311(b) of the Clean Water Act: Defendant's Discharges of Oil and Hazardous Substances into the Navigable Waters of the United States**

135.    Plaintiff United States realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

136.    Defendant is an "owner and operator" of the Facility, within the meaning Section 311(a)(6), 33 U.S.C. § 1321(a)(6).

137.    The Facility is an "onshore facility," within the meaning of Section 311(a)(10). 33 U.S.C. § 1321(a)(10).

138.    Defendant discharged oil or hazardous substances into or upon the Tangipahoa River.

139.    The Tangipahoa River is a "navigable water of the United States" within the meaning of Section 311(b)(3). 33 U.S.C. § 1321(b)(3).

140.    The spilling, leaking, pouring, emptying, or emitting of oil or hazardous substances from the Facility constitutes "discharges" of oil or hazardous substances, within the meaning of Section 311(a)(2), 33 U.S.C. § 1321(a)(2).

141.    The discharges consisted of automotive oils and lubricants, which are "oil" within the meaning of Section 311(a)(1), 33 U.S.C. § 1321(a)(1), and of Section 311(b)(2)(A) of the Clean Water Act, 33 U.S.C. § 1321(b)(2)(A), and 40 C.F.R. § 116.4.

142.     Subject to reasonable opportunity for investigation and discovery, the discharge also consisted of "hazardous substances," within the meaning of Section 311(a)(14), 33 U.S.C. § 1321(a)(14), and designated pursuant to 40 C.F.R. § 116.4, including but not limited to the following: naphthalene, xylene, and phosphoric acid.

143.     Defendant's discharge of oil or hazardous substances "caused a film or sheen upon, or discoloration of, the surface" of the Tangipahoa River, or "caused a sludge or emulsion to be deposited beneath the surface" of the Tangipahoa River. 40 C.F.R. § 110.3(b).

144.     The oil or hazardous substances discharged from Defendant's Facility into the Tangipahoa River were in such quantities "as may be harmful" within the meaning of Section 311(b)(3) and (4). 33 U.S.C. § 1321(b)(3), (4); 40 C.F.R. § 110.3(b).

145.     Defendant's discharges of oil or hazardous substances into or upon the navigable waters of the United States violated Section 311(b)(3) and (4) of the Clean Water Act. 33 U.S.C. § 1321(b)(3), (4).

146.     Pursuant to Section 311(b)(7)(A) of the Clean Water Act, Defendant is liable to the United States for civil penalties of up to $59,114 per day per violation and up to $2,364 per barrel discharged. 33 U.S.C. § 1321(b)(7)(A); 40 C.F.R. § 19.4. If it is proven that the violations resulted from gross negligence or willful misconduct, Defendant is liable for civil penalties not less than $236,451 per discharge and up to $7,093 per barrel discharged under Section 311(b)(7)(D). 33 U.S.C. § 1321(b)(7)(D); 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF

**Violation of Section 311(e) of the Clean Water Act:**
**Defendant's Discharges of Oil and Hazardous Substances into the Tangipahoa River**

147.     Plaintiff United States realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

148.    As of the filing of this Complaint, the cleanup of the discharge is ongoing, but there is still a threat of another discharge if there is a significant rainfall event.

149.    Although a temporary storm water collection is in place at the Facility, it may not be able to withstand significant rainfall.

150.    Corrective measures imposed by the Court are needed to assure proper operations going forward.

151.    Pursuant to Section 311(e) of the Clean Water Act, United States seeks injunctive relief to prevent future discharges of oil or hazardous substances by Defendant into the Tangipahoa River or other navigable waters of the United States. 33 U.S.C. § 1321(e).

### THIRD CLAIM FOR RELEF

**Violation of Section 301 of the Clean Water Act:**
**Unauthorized Discharges from Defendant's Facility During the Incident**

152.    Plaintiff United States realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

153.    Defendant discharged oil and other pollutants into the Tangipahoa River because of the Incident.

154.    The oil that discharged from the Facility is a "pollutant" within the meaning of Section 502(6) of the Clean Water Act. 33 U.S.C. § 1362(6).

155.    The Tangipahoa River is a "navigable water" within the meaning of Section 502(7) of the Clean Water Act. 33 U.S.C. § 1362(7); 40 C.F.R. § 110.1.

156.    The Facility includes various "point sources," within the meaning of Section 502(14) of the Clean Water Act, that conveyed pollutants to the Tangipahoa River. 33 U.S.C. § 1362(14).

157.    Defendant's discharge of pollutants was not authorized by any Clean Water Act permit.

158.    Defendant's discharge was an unauthorized discharge of a pollutant from a point source into navigable waters, in violation of Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).

159.    Pursuant to Section 309(b) of the Clean Water Act, Defendant is liable to the United States for injunctive relief for violating Clean Water Act Section 301. 33 U.S.C. §§ 1311 and 1319.

## FOURTH CLAIM FOR RELIEF

### Violation of Section 311(j)(5) of the Clean Water Act:
### Defendant Had No Facility Response Plan

160.    Plaintiff United States realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

161.    Defendant must have a Facility Response Plan, pursuant to Section 311(j)(5) of the Clean Water Act and 40 C.F.R. § 112.20.

162.    Defendant is an "owner and operator" of the Facility, as defined by Section 311(a)(6) of the Clean Water Act. 33 U.S.C. § 1321(a)(6).

163.    The Facility is an "onshore facility," as defined by Section 311(a)(10) of the Clean Water Act. 33 U.S.C. § 1321(a)(10).

164.    The Facility is a "non-transportation-related onshore facility" because it is an oil storage facility within the meaning of 40 C.F.R. § 112.2.

165.    At all times relevant to this action, the Facility has been subject to 40 C.F.R. § 112.20.

166.    The Facility is a "substantial harm facility" because its total oil storage capacity is greater than or equal to 1,000,000 gallons and the Facility "does not have secondary containment

for each above-ground storage area that is sufficiently large to contain the capacity of the largest above-ground oil storage tank within each storage area plus sufficient freeboard to allow for precipitation," as defined by 40 C.F.R. § 112.20(f)(1)(ii)(A).

167.    In addition, or in the alternative, the Facility is a "substantial harm facility" because its total oil storage capacity is greater than or equal to 1,000,000 gallons and it is located at a distance "such that a discharge from the [F]acility could cause injury to fish and wildlife and sensitive environments." 40 C.F.R. § 112.20(f)(1)(ii)(B).

168.    Defendant does not have a Facility Response Plan but instead has an Emergency Response Plan.

169.    That Emergency Response Plan does not contain all of the required elements for a Facility Response Plan in 40 C.F.R. § 112.20, nor does the plan refence the regulations.

170.    Defendant is in violation of Section 311(j)(5) of the Clean Water Act because it does not have a Facility Response Plan. 33 U.S.C. § 1321(j)(5).

171.    Pursuant to Section 311(b)(7) of the Clean Water Act, Defendant is liable for penalties in an amount up to $59,114 per day for each violation that occurred after November 2, 2015. 33 U.S.C. § 1321(b)(7)(C), and 40 C.F.R. § 19.4.

## FIFTH CLAIM FOR RELIEF

**Violation of Section 311(j)(1) of the Clean Water Act:**
**Failure to Comply with the SPCC Regulations, 40 C.F.R. Part 112**

172.    Plaintiff United States realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

173.    Defendant must have an SPCC Plan, pursuant to Section 311(j)(1) of the Clean Water Act and 40 C.F.R. Part 112.

174.    Defendant's Facility has an aggregate above-ground storage capacity greater than 1,320 gallons of oil in above-ground storage tanks, drums, and totes. 40 C.F.R. § 112.1(d)(2)(ii).

175.    Defendant is engaged in drilling, producing, gathering, storing, processing, refining, transferring, distributing, using, or consuming oil or oil products located at the Facility. 40 C.F.R. § 112.1(b).

176.    The Facility is an "onshore facility," as defined by Section 311(a)(10) of the Clean Water Act. 33 U.S.C. § 1321(a)(10).

177.    The Facility is a "non-transportation-related onshore facility" because it is an oil storage facility within the meaning of 40 C.F.R. § 112.2.

178.    Defendant's Facility, due to its location, could reasonably be expected to discharge oil to a navigable water of the United States or its adjoining shorelines in a harmful quantity. 40 C.F.R. § 112.1(b); 40 C.F.R. § 110.3.

179.    At all times relevant to this action, the Facility has been subject to the SPCC regulations codified at 40 C.F.R. Part 112 because it is a non-transportation-related onshore facility that came into operation before August 16, 2002. 40 C.F.R. § 112.1.

180.    Defendant, as the owner or operator of an SPCC-regulated facility, is subject to the SPCC regulations pursuant to Section 311(j)(1)(C) of the Clean Water Act. 33 U.S.C. § 1321(j)(1)(C); 40 C.F.R. § 112.1; Executive Order 12777.

181.    As the owner or operator of the Facility, Defendant must prepare and implement its SPCC Plan in accordance with 40 C.F.R. § 112.3, meet the general requirements for the SPCC Plan in 40 C.F.R. § 112.7, and comply with specific discharge prevention and containment procedures listed in 40 C.F.R. § 112.8.

182.    As set forth in Paragraph 128 (a)–(p), Defendant did not comply with certain provisions of the SPCC regulations because its SPCC Plan fails to meet all requirements of 40 C.F.R. Part 112.

183.    At least as of April 2023, Defendant violated and continues to violate 40 C.F.R. §§ 112.3, 112.5, 112.7 and 112.8, promulgated pursuant to Section 311(j) of the Clean Water Act, 33 U.S.C. § 1321(j), because its SPCC Plan fails to meet the requirements of the SPCC regulations.

184.    Each deficiency in the SPCC Plan is a violation of 40 C.F.R. Part 112.

185.    Defendant is in violation of Section 311(j)(1) of the Clean Water Act for failing to comply with 40 C.F.R. Part 112.

186.    Pursuant to Section 311(b)(7) of the Clean Water Act, Defendant is liable for civil penalties in an amount up to $59,114 per day for each violation that occurred after November 2, 2015. 33 U.S.C. § 1321(b)(7)(C); 40 C.F.R. § 19.4.

## SIXTH CLAIM FOR RELIEF

### Violations of Defendant's LPDES Permit: Effluent Limit Exceedances

187.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

188.    Defendant must comply with the effluent limitations set in its LPDES Permit. LPDES Permit LA0127154 (Permit Requirements, Effluent Limitations and Monitoring Requirements, pages 1–21 of 25 and Standard Conditions for LPDES Permits, Section A.2); La. R.S. 30:2076(A)(3); and LAC 33:IX.501.D and LAC 33:IX.2701.A.

189.    Defendant's Discharge Monitoring Reports from May 2022 through June 2025 report exceedances of permit effluent limitations for BOD, TOC, COD, TSS, pH, oil and grease, and fecal coliform. Table 1 of Appendix 1 of this Complaint identifies the dates and the relevant

Facility Outfalls for each effluent limit exceedance as reported in Defendant's Discharge Monitoring Reports.

190.    Each instance that Defendant failed to comply with an effluent limitation in LPDES Permit LA0127154 is a separate violation of the LPDES Permit and thereby is a violation of the Clean Water Act and the LEQA.

191.    Pursuant to Sections 309(b) and (d) of the Clean Water Act, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed $68,445 per day for each violation. 33 U.S.C. § 1319(b), (d); 40 C.F.R. § 19.4. Pursuant to La. R.S. 30:2025(E), Defendant also is liable to LDEQ for not more than $32,500 for each day of violation.

## SEVENTH CLAIM FOR RELIEF

### Violations of Defendant's LPDES Permit: Presence of Sheen

192.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

193.    Defendant's LPDES Permit prohibits the discharge of floating or settleable solids or visible foam in other than trace amounts, nor of free oil or other oily materials, nor of toxic materials in quantities such as to cause toxicity to aquatic organisms. LPDES Permit LA0127154 (Permit Requirements, Narrative Requirements, N-3, pages 4, 10, 12, 18, and 22 of 25 and Standard Conditions for LPDES Permits, Section A.2); La. R.S. 30:2076(A)(3); and LAC 33:IX.2701.A.

194.    A sheen was present at Facility Outfalls 002, 004, 005, 006, or 008 on various days between May 3, 2022 and November 7, 2024. Table 2 of Appendix 1 of this Complaint identifies the dates and relevant Outfalls where a visible sheen was present.

195.    Each instance that a sheen was visible at Outfalls 002, 004, 005, 006, and 008 is a separate violation of LPDES Permit LA0127154 and thereby is a violation of the Clean Water Act and LEQA.

196.    Pursuant to Sections 309(b) and (d) of the Clean Water Act, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed $68,445 per day for each violation. 33 U.S.C. § 1319(b), (d); 40 C.F.R. § 19.4. Pursuant to La. R.S. 30:2025(E), Defendant also is liable to LDEQ for not more than $32,500 for each day of violation.

## EIGHTH CLAIM FOR RELIEF

**Violations of Defendant's LPDES Permit: Failure to Conduct Daily Visual Observations**

197.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

198.    Defendant must conduct daily observations to determine if a visible sheen is present at the outfall. LPDES Permit LA0127154 (Permit Requirements, Narrative Requirements, N-4, pages 4, 10, 12, 18, and 22 of 25 and Standard Conditions for LPDES Permits, Section A.2); La. R.S. 30:2076(A)(3); LAC 33:IX.2701 and LAC 33:IX.2701.A and J.

199.    Defendant failed to conduct daily visual observations of Outfalls 002, 004, 005, 006, and 008 on weekends and some holidays from May 2022 through at least April 2025.

200.    Each instance that Defendant failed to conduct a daily visual observation is a separate violation of LPDES Permit LA0127154 and thereby is a violation of the Clean Water Act and the LEQA.

201.    Pursuant to Sections 309(b) and (d) of the Clean Water Act, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed $68,445 per day for each

violation. 33 U.S.C. § 1319(b), (d); 40 C.F.R. § 19.4. Pursuant to La. R.S. 30:2025(E), Defendant also is liable to LDEQ for not more than $32,500 for each day of violation.

### NINTH CLAIM FOR RELIEF

**Violations of Defendant's LPDES Permit:**
**Failure to Maintain Records of Daily Visual Observations**

202.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

203.    Defendant must keep a manual log recording the results of daily visual observations. Defendant must retain that manual log at the Facility for three years. LPDES Permit LA0127154 (Permit Requirements, Narrative Requirements, N-4, pages 4, 10, 12, 18, and 22 of 25 and Standard Conditions for LPDES Permits, Sections A.2 & C.3); La. R.S. 30:2076(A)(3); and LAC 33:IX.2701.A and J.

204.    When LDEQ requested copies of Daily Visual Logs for from May 2022 to April 2025, Defendant provided the records for Outfalls 002, 004, 005, 006, and 008. However, Defendant could not locate records for these Outfalls for the following dates: December 1, 2022 to December 6, 2022; December 19, 2022 to January 6, 2023; February 13, 2023 to February 17, 2023; and March 6, 2023 to March 17, 2023.

205.    Defendant failed to maintain records of daily visual observations for Outfalls 002, 004, 005, 006, and 008.

206.    Each instance that Defendant failed to maintain records of daily visual observation is a separate violation of LPDES Permit LA0127154 and thereby is a violation of the Clean Water Act and the LEQA.

207.    Pursuant to Sections 309(b) and (d) of the Clean Water Act, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed $68,445 per day for each

violation. 33 U.S.C. § 1319(b), (d); 40 C.F.R. § 19.4. Pursuant to La. R.S. 30:2025(E), Defendant also is liable to LDEQ for not more than $32,500 for each day of violation.

## TENTH CLAIM FOR RELIEF

### Violations of Defendant's LPDES Permit: Failure to Report Presence of Sheen

208.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

209.    Defendant must submit a letter of noncompliance in accordance with Standard Conditions Section D.7 of its LPDES Permit if a visual sheen is present. LPDES Permit LA0127154 (Permit Requirements, Narrative Requirements, N-4, pages 4, 10, 12, 18, and 22 of 25 and Standard Conditions for LPDES Permits, Section A.2); La. R.S. 30:2076(A)(3); and LAC 33:IX.2701.A.

210.    Defendant failed to submit letters of noncompliance for the days on which a sheen was observed at Outfalls 002, 004, 005, 006, and 008. Table 2 of Appendix 1 of this Complaint identifies the dates and relevant Outfalls where a visible sheen was present.

211.    Each instance that Defendant failed to submit a letter of noncompliance is a separate violation of LPDES Permit LA0127154 and thereby is a violation of the Clean Water Act and the LEQA.

212.    Pursuant to Sections 309(b) and (d) of the Clean Water Act, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed $68,445 per day for each violation. 33 U.S.C. § 1319(b), (d); 40 C.F.R. § 19.4. Pursuant to La. R.S. 30:2025(E), Defendant also is liable to LDEQ for not more than $32,500 for each day of violation.

## LOUISIANA STATE LAW CLAIMS

## ELEVENTH CLAIM FOR RELIEF

### Violation of La. R.S. 30:2075 and La. R.S. 30:2076 of the LEQA:
### Unauthorized Discharges from Defendant's Facility During the Incident

213.    Plaintiff State of Louisiana realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

214.    Beginning on August 22, 2025, and following the start of the Incident at the Facility, Defendant discharged pollutants into the waters of the State of Louisiana within the meaning of La. R.S.30:2073(7).

215.    Defendant's discharge of pollutants was not authorized by the LEQA or any LPDES permit.

216.    As a result of the Defendant's unauthorized discharge, as set forth in this Complaint, the waters of the state were not free from floating debris, scum, oil, or other matter that formed nuisances and negatively impacted the aesthetics of the waters of the state, and the Defendant's unauthorized discharge injured, was toxic to, or produced demonstrated adverse physiological responses in animals, fish, shellfish, wildlife, or plants in violation of La. R.S. 30:2076(A)(1) and (A)(3), LAC 33:IX.501A, and LAC 33:IX.1113.B.1.

217.    Defendant's unauthorized discharge, as set forth in this Complaint, caused substances to be present in the waters of the state in quantities that alone or in combination was toxic to human, plant, or animal life or significantly increased health risks due to exposure to the substances or consumption of contaminated fish or other aquatic life in violation of La. R.S. 30:2076(A)(1) and (A)(3), LAC 33:IX.501A, and LAC 33:IX.1113.B.5.

218.    Defendant's unauthorized discharge, as set forth in this Complaint, forced the closure of a portion of the Tangipahoa River to boating on or about August 24, 2025, and for some

time thereafter. Boating, which is a designated secondary contact usage of this water body, was hindered by the presence of free or floating oil. Defendant's interference with a designated use of a waterbody due to the presence of free or floating oil was in violation of La. R.S. 30:2076(A)(1) and (A)(3), LAC 33:IX.501A, and LAC 33:IX.1113.B.6.

219.    Defendant violated La. R.S. 30:2075 and La. R.S. 30:2076(A)(1) and (A)(3) of the LEQA for the discharge of pollutants to the waters of the State of Louisiana.

220.    Pursuant to La. R.S. 30:2025, Defendant is liable for a civil penalty of not more than the cost to LDEQ of any response action made necessary by these violations which is not voluntarily paid by the violator, and a penalty of not more than $32,500 for each day of violation, and, if it is established that any violation was done intentionally, willfully, or knowingly, or resulted in a discharge or disposal which caused irreparable or severe damage to the environment, or if the substance discharged is one which endangers human life or health, Defendant may be liable for an additional penalty of not more than $1,000,000.

## TWELFTH CLAIM FOR RELIEF

### Pursuant to La. R.S. 30:2025(E): State Recovery of Response Action Costs

221.    Plaintiff State of Louisiana realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

222.    The State of Louisiana, including LDEQ, has incurred response action costs associated with the discharge resulting from the Incident.

223.    Pursuant to La. R.S. 30:2025, Defendant is liable to State of Louisiana for LDEQ's unpaid response action costs incurred in responding to the discharge.

## THIRTEENTH CLAIM FOR RELIEF

### Violation of La. R.S. 30:2075 and La. R.S. 30:2076 of the LEQA, Violations of Defendant's LPDES Permit: Discharge of Oil, Oily Materials, or Dye

224.    Plaintiff State of Louisiana realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

225.    Defendant failed to comply with LPDES Permit LA0127154 and maintain waters of the state in accordance with the Water Quality Regulations.

226.    Specifically, Defendant allowed the discharge of oil, oily materials, or dye from Outfalls 002, 004, and 006. LPDES Permit LA0127154 (Permit Requirements, Narrative Requirements, N-3, pages 4, 10, & 18 of 25 and Standard Conditions for LPDES Permits, Section A.2); La. R.S. 30:2076(A)(3); LAC 33:IX.2701.A; and LAC 33:IX.1113.B.1. Table 3 of Appendix 1 of this Complaint identifies the dates and relevant Outfalls from which oil, oily materials, or dye were discharged.

227.    Pursuant to La. R.S. 30:2025(E), Defendant is liable to LDEQ for not more than $32,500 for each day of violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter judgment against Defendant and in favor of the United States and the State of Louisiana;

B.    Enter judgment that Defendant is liable to the United States for civil penalties, pursuant to Section 311(b) of the Clean Water Act, 33 U.S.C. § 1321(b), and assess civil penalties of up to $59,114 per day of violation for Defendant's discharges related to the Incident and up to $2,364 per barrel discharged pursuant to Section 311(b)(7)(A) of the Clean Water Act, 33 U.S.C. § 1321(b)(7)(A); or if the violations resulted from gross negligence or willful misconduct, not less than $236,451 per discharge and up to $7,093 per barrel discharged pursuant to Section 311(b)(7)(D) of the Clean Water Act, 33 U.S.C. § 1321(b)(7)(D);

41

C.      Enter judgment that Defendant is liable to the United States for all appropriate injunctive relief pursuant to Section 311(e) of the Clean Water Act, 33 U.S.C. § 1321(e), and award injunctive relief against Defendant as appropriate;

D.      Enter judgment that Defendant is liable to the United States and the State of Louisiana for all appropriate injunctive relief related to the Incident pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), for violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and award injunctive relief against Defendant as appropriate;

E.      Enter judgment that Defendant is liable to the United States for civil penalties pursuant to Section 311(b) of the Clean Water Act, 33 U.S.C. § 1321(b), and assess a civil penalty of up to $59,114 per day of violation for each violation of the SPCC regulations and Facility Response Plan regulations, pursuant to Section 311(b)(7)(C) of the Clean Water Act, 33 U.S.C. § 1321(b)(7)(C);

F.      Order Defendant to take all appropriate action to prevent spills from its Facility into waters of the United States, in compliance with the Facility Response Plan and SPCC regulations and the Clean Water Act;

G.      Enter judgment that Defendant is liable to the United States for injunctive relief and civil penalties related to Defendant's LPDES Permit violations, pursuant to Sections 309(b) and (d) of the Clean Water Act, 33 U.S.C. § 1319(b), (d);

H.      Enter judgment against Defendant and award LDEQ its unpaid response action costs, civil penalties of not more than $32,500 for each day of violation, and, if it is established that the violations were done intentionally, willfully, or knowingly, or resulted in a discharge or disposal which caused irreparable or severe damage to the environment or if the substance

discharged is one which endangers human life or health, an additional penalty of not more than $1,000,000, pursuant to La. R.S. 30:2025(E);

I.      Order Defendant to take any and all steps necessary to meet and maintain compliance with the LEQA, LAC 33:IX, and its LPDES permit;

J.      Order Defendant to take all necessary actions to prevent further discharges into waters of the United States and waters of the State of Louisiana;

K.      Award the United States and the State their costs of this action; and

L.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

<u>s/  Kiana Courtney                              </u>
<u>Trial Attorney:</u>     KIANA COURTNEY (Florida Bar # 1010206)
HANNAH FRAZIER (Oregon Bar # 215453)
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 532-3316
Email: Kiana.Courtney@usdoj.gov
            Hannah.Frazier@usdoj.gov

MICHAEL M. SIMPSON
Acting United States Attorney

JASON M. BIGELOW (La. Bar # 29761)
Assistant United States Attorney
Eastern District of Louisiana

650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3025
Email: Jason.Bigelow@usdoj.gov

OF COUNSEL:

TUCKER HENSON (Texas Bar # 24065401)
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, Texas 75202-2733
Phone: (214) 665-8148

**FOR THE STATE OF LOUISIANA THROUGH THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY AND ATTORNEY GENERAL LIZ MURRILL:**

LIZ MURRILL
ATTORNEY GENERAL

By:    s/ David A. Peterson
       DAVID A. PETERSON (# 22591)
       CAROLINE H. CATCHINGS (# 18831)
       RICHELLE N. MOORE (# 30641)
       Assistant Attorneys General
       Louisiana Department of Justice
       Civil Division
       P.O. Box 94005
       Baton Rouge, LA 70821
       Telephone: (225) 326-6000
       Facsimile: (225) 326-6099
       Email: PetersonD@ag.louisiana.gov
              CatchingsC@ag.louisiana.gov
              MooreR@ag.louisiana.gov

       JIMMY R. FAIRCLOTH, JR. (La. # 20645)
       Special Assistant Attorney General
       **Faircloth Melton Bash & Green, LLC**
       105 Yorktown Drive
       Alexandria, LA 71303
       Phone: (318) 619-7755
       Fax: (318) 619-7744
       Email: jfaircloth@fairclothlaw.com

       and

       JILL C. CLARK, General Counsel (# 33050)

By:    s/ Jay L. Glorioso
       JAY L. GLORIOSO (# 28050)
Trial Attorney:    MICHAEL J. DANIELS (# 20775)
       Louisiana Department of Environmental Quality
       Legal Division
       P.O. Box 4302
       Baton Rouge, Louisiana 70821-4302
       Telephone: (225) 219-3985
       Fax: (225) 219-4068
       Email: Jay.Glorioso@la.gov
              Mike.Daniels@la.gov

**Plaintiffs will send a request for waiver of service to:**
Smitty's Supply, Inc.
63399 Hwy. 51 North
Roseland, Louisiana 70456

# APPENDIX 1

**TABLE 1: Effluent Limit Exceedances**

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|---|---|---|---|---|
| 05/31/2022 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 100 mg/L |
| 05/31/2022 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 16.6 mg/L |
| 05/31/2022 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 389 mg/L |
| 06/30/2022 | 001Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 2000 #/100mL |
| 06/30/2022 | 001Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 2000 #/100mL |
| 06/30/2022 | 001Q | Solids, total suspended Monthly Average | 30 mg/L | 44 mg/L |
| 06/30/2022 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 06/30/2022 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |
| 06/30/2022 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 86.4 mg/L |
| 06/30/2022 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 239 mg/L |
| 06/30/2022 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 360 mg/L |
| 07/31/2022 | 002A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 275 mg/L |
| 07/31/2022 | 002A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 135 mg/L |
| 07/31/2022 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 92 mg/L |
| 07/31/2022 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 340 mg/L |
| 08/31/2022 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 578 mg/L |
| 08/31/2022 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 354 mg/L |
| 08/31/2022 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 2290 mg/L |
| 08/31/2022 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 52.1 mg/L |
| 08/31/2022 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 48.4 mg/L |
| 08/31/2022 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 269 mg/L |
| 09/30/2022 | 001Q | Solids, total suspended Monthly Average | 30 mg/L | 40 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|------|---------|-----------|--------------|--------------|
| 09/30/2022 | 003Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 166 mg/L |
| 09/30/2022 | 003Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 166 mg/L |
| 09/30/2022 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 2000 #/100mL |
| 09/30/2022 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 2000 #/100mL |
| 09/30/2022 | 003Q | Solids, total suspended Daily Maximum | 45 mg/L | 71 mg/L |
| 09/30/2022 | 003Q | Solids, total suspended Monthly Average | 30 mg/L | 71 mg/L |
| 09/30/2022 | 102Q | Solids, total suspended Monthly Average | 30 mg/L | 38 mg/L |
| 09/30/2022 | 105Q | Solids, total suspended Daily Maximum | 45 mg/L | 52 mg/L |
| 09/30/2022 | 105Q | Solids, total suspended Monthly Average | 30 mg/L | 52 mg/L |
| 09/30/2022 | 205Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 09/30/2022 | 205Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |
| 10/31/2022 | 002A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 109 mg/L |
| 10/31/2022 | 002A | Oil & Grease Daily Maximum | 15 mg/L | 15.1 mg/L |
| 10/31/2022 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 272 mg/L |
| 10/31/2022 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 124 mg/L |
| 10/31/2022 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 964 mg/L |
| 10/31/2022 | 005A | Oil & Grease Daily Maximum | 15 mg/L | 17.4 mg/L |
| 10/31/2022 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 142 mg/L |
| 11/30/2022 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 168 mg/L |
| 11/30/2022 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 31.1 mg/L |
| 11/30/2022 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 349 mg/L |
| 11/30/2022 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 45.9 mg/L |
| 11/30/2022 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 190 mg/L |
| 12/31/2022 | 001Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 40.1 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|---|---|---|---|---|
| 12/31/2022 | 002A | Oil & Grease Daily Maximum | 15 mg/L | 26.1 mg/L |
| 12/31/2022 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 964 mg/L |
| 12/31/2022 | 005A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 252 mg/L |
| 12/31/2022 | 205Q | Solids, total suspended Daily Maximum | 45 mg/L | 48.8 mg/L |
| 12/31/2022 | 205Q | Solids, total suspended Monthly Average | 30 mg/L | 48.8 mg/L |
| 01/31/2023 | 002A | pH Instantaneous Minimum | 6 SU | 4.6 SU |
| 01/31/2023 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 16.6 mg/L |
| 01/31/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 142 mg/L |
| 01/31/2023 | 005A | pH Instantaneous Minimum | 6 SU | 5.6 SU |
| 01/31/2023 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 47.5 mg/L |
| 01/31/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 133000 mg/L |
| 01/31/2023 | 006A | pH Instantaneous Minimum | 6 SU | 2.6 SU |
| 02/28/2023 | 002A | Oil & Grease Daily Maximum | 15 mg/L | 24 mg/L |
| 02/28/2023 | 002A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 327 mg/L |
| 02/28/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 171 mg/L |
| 02/28/2023 | 005A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 129 mg/L |
| 03/31/2023 | 001Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 57.6 mg/L |
| 03/31/2023 | 001Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 57.6 mg/L |
| 03/31/2023 | 003Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 31.8 mg/L |
| 03/31/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 365 mg/L |
| 03/31/2023 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 51.9 mg/L |
| 03/31/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 1950 mg/L |
| 03/31/2023 | 005A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 227 mg/L |
| 03/31/2023 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 18.1 mg/L |
| 03/31/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 2408 mg/L |
| 03/31/2023 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 263 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|---|---|---|---|---|
| 03/31/2023 | 102Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 36.1 mg/L |
| 04/30/2023 | 002A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 325 mg/L |
| 04/30/2023 | 002A | Oil & Grease Daily Maximum | 15 mg/L | 15.5 mg/L |
| 04/30/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 469 mg/L |
| 04/30/2023 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 78.5 mg/L |
| 04/30/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 1380 mg/L |
| 04/30/2023 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 192 mg/L |
| 04/30/2023 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 105 mg/L |
| 04/30/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 1360 mg/L |
| 05/31/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 274 mg/L |
| 05/31/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 136 mg/L |
| 05/31/2023 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 300 mg/L |
| 05/31/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 1260 mg/L |
| 06/30/2023 | 001Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 61.8 mg/L |
| 06/30/2023 | 001Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 61.8 mg/L |
| 06/30/2023 | 001Q | Solids, total suspended Daily Maximum | 45 mg/L | 144 mg/L |
| 06/30/2023 | 001Q | Solids, total suspended Monthly Average | 30 mg/L | 144 mg/L |
| 06/30/2023 | 002A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 457 mg/L |
| 06/30/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 183 mg/L |
| 06/30/2023 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 133 mg/L |
| 06/30/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 1180 mg/L |
| 06/30/2023 | 005A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 147 mg/L |
| 06/30/2023 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 18.7 mg/L |
| 06/30/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 410 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|---|---|---|---|---|
| 06/30/2023 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 758 mg/L |
| 06/30/2023 | 102Q | Solids, total suspended Daily Maximum | 45 mg/L | 75 mg/L |
| 06/30/2023 | 102Q | Solids, total suspended Monthly Average | 30 mg/L | 75 mg/L |
| 06/30/2023 | 105Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 75.6 mg/L |
| 06/30/2023 | 105Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 75.6 mg/L |
| 06/30/2023 | 105Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 440 #/100mL |
| 06/30/2023 | 105Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 440 #/100mL |
| 06/30/2023 | 105Q | Solids, total suspended Daily Maximum | 45 mg/L | 102 mg/L |
| 06/30/2023 | 105Q | Solids, total suspended Monthly Average | 30 mg/L | 102 mg/L |
| 06/30/2023 | 205Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 575 #/100mL |
| 06/30/2023 | 205Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 575 #/100mL |
| 07/31/2023 | 002A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 137 mg/L |
| 07/31/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 51.3 mg/L |
| 07/31/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 261 mg/L |
| 08/31/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 188 mg/L |
| 08/31/2023 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 52.7 mg/L |
| 08/31/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 445 mg/L |
| 08/31/2023 | 005A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 138 mg/L |
| 08/31/2023 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 100 mg/L |
| 08/31/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 480 mg/L |
| 09/30/2023 | 001Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 42.5 mg/L |
| 09/30/2023 | 001Q | Solids, total suspended Daily Maximum | 45 mg/L | 147 mg/L |
| 09/30/2023 | 001Q | Solids, total suspended Monthly Average | 30 mg/L | 147 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|------|---------|-----------|--------------|--------------|
| 09/30/2023 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | <2000 #/100mL |
| 09/30/2023 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 2000 #/100mL |
| 09/30/2023 | 003Q | Solids, total suspended Monthly Average | 30 mg/L | 45 mg/L |
| 09/30/2023 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 60 mg/L |
| 09/30/2023 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 327 mg/L |
| 09/30/2023 | 005A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 246 mg/L |
| 09/30/2023 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 74.4 mg/L |
| 09/30/2023 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 15.5 mg/L |
| 09/30/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 422 mg/L |
| 09/30/2023 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 919 mg/L |
| 09/30/2023 | 102Q | Solids, total suspended Daily Maximum | 45 mg/L | 113 mg/L |
| 09/30/2023 | 102Q | Solids, total suspended Monthly Average | 30 mg/L | 113 mg/L |
| 09/30/2023 | 105Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 93.7 mg/L |
| 09/30/2023 | 105Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 93.7 mg/L |
| 09/30/2023 | 105Q | Solids, total suspended Daily Maximum | 45 mg/L | 52.4 mg/L |
| 09/30/2023 | 105Q | Solids, total suspended Monthly Average | 30 mg/L | 52.4 mg/L |
| 09/30/2023 | 205Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 840 #/100mL |
| 09/30/2023 | 205Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 840 #/100mL |
| 09/30/2023 | 205Q | Solids, total suspended Monthly Average | 30 mg/L | 34 mg/L |
| 11/30/2023 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 19.2 mg/L |
| 11/30/2023 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 143 mg/L |
| 12/31/2023 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | >6000 #/100mL |
| 12/31/2023 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | >6000 #/100mL |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|------|---------|-----------|--------------|--------------|
| 12/31/2023 | 105Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 105 mg/L |
| 12/31/2023 | 105Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 105 mg/L |
| 12/31/2023 | 105Q | Solids, total suspended Daily Maximum | 45 mg/L | 144 mg/L |
| 12/31/2023 | 105Q | Solids, total suspended Monthly Average | 30 mg/L | 144 mg/L |
| 03/31/2024 | 001Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 64.2 mg/L |
| 03/31/2024 | 001Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 64.2 mg/L |
| 03/31/2024 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 15.5 mg/L |
| 03/31/2024 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 430 mg/L |
| 03/31/2024 | 105Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 119 mg/L |
| 03/31/2024 | 105Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 119 mg/L |
| 03/31/2024 | 105Q | Coliform, fecal general Daily Maximum | 400 #/100mL | >6000 #/100mL |
| 03/31/2024 | 105Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | >6000 #/100mL |
| 03/31/2024 | 105Q | Solids, total suspended Daily Maximum | 45 mg/L | 110 mg/L |
| 03/31/2024 | 105Q | Solids, total suspended Monthly Average | 30 mg/L | 110 mg/L |
| 04/30/2024 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 126 mg/L |
| 04/30/2024 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 16 mg/L |
| 04/30/2024 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 427 mg/L |
| 06/30/2024 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 06/30/2024 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |
| 06/30/2024 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 74 mg/L |
| 06/30/2024 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 39.3 mg/L |
| 06/30/2024 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 283 mg/L |
| 06/30/2024 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 22.5 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|------|---------|-----------|--------------|--------------|
| 06/30/2024 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 710 mg/L |
| 06/30/2024 | 008Q | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 65.5 mg/L |
| 06/30/2024 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 35.5 mg/L |
| 06/30/2024 | 008Q | Solids, total suspended Daily Maximum | 45 mg/L | 308 mg/L |
| 06/30/2024 | 008Q | Solids, total suspended Monthly Average | 30 mg/L | 308 mg/L |
| 06/30/2024 | 102Q | Solids, total suspended Daily Maximum | 45 mg/L | 454 mg/L |
| 06/30/2024 | 102Q | Solids, total suspended Monthly Average | 30 mg/L | 454 mg/L |
| 06/30/2024 | 105Q | Solids, total suspended Daily Maximum | 45 mg/L | 207 mg/L |
| 06/30/2024 | 105Q | Solids, total suspended Monthly Average | 30 mg/L | 207 mg/L |
| 09/30/2024 | 001Q | Solids, total suspended Daily Maximum | 45 mg/L | 48 mg/L |
| 09/30/2024 | 001Q | Solids, total suspended Monthly Average | 30 mg/L | 48 mg/L |
| 09/30/2024 | 003Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 65.2 mg/L |
| 09/30/2024 | 003Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 65.2 mg/L |
| 09/30/2024 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 09/30/2024 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |
| 09/30/2024 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 24.8 mg/L |
| 09/30/2024 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 142 mg/L |
| 09/30/2024 | 008Q | Solids, total suspended Daily Maximum | 45 mg/L | 143 mg/L |
| 09/30/2024 | 008Q | Solids, total suspended Monthly Average | 30 mg/L | 143 mg/L |
| 12/31/2024 | 001Q | Solids, total suspended Daily Maximum | 45 mg/L | 127 mg/L |
| 12/31/2024 | 001Q | Solids, total suspended Monthly Average | 30 mg/L | 127 mg/L |
| 12/31/2024 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 12/31/2024 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|---|---|---|---|---|
| 12/31/2024 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 714 mg/L |
| 12/31/2024 | 008Q | Solids, total suspended Daily Maximum | 45 mg/L | 224 mg/L |
| 12/31/2024 | 008Q | Solids, total suspended Monthly Average | 30 mg/L | 224 mg/L |
| 12/31/2024 | 102Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 30.7 mg/L |
| 12/31/2024 | 102Q | Solids, total suspended Monthly Average | 30 mg/L | 30.4 mg/L |
| 12/31/2024 | 205Q | Solids, total suspended Daily Maximum | 45 mg/L | 90.2 mg/L |
| 12/31/2024 | 205Q | Solids, total suspended Monthly Average | 30 mg/L | 90.2 mg/L |
| 02/28/2025 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 79 mg/L |
| 02/28/2025 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 312 mg/L |
| 03/31/2025 | 003Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 34.4 mg/L |
| 03/31/2025 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 21.4 mg/L |
| 03/31/2025 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 175 mg/L |
| 03/31/2025 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 140 mg/L |
| 03/31/2025 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 132 mg/L |
| 03/31/2025 | 008Q | Solids, total suspended Daily Maximum | 45 mg/L | 104 mg/L |
| 03/31/2025 | 008Q | Solids, total suspended Monthly Average | 30 mg/L | 104 mg/L |
| 03/31/2025 | 102Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 33 mg/L |
| 03/31/2025 | 205Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 215 #/100mL |
| 04/30/2025 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 212 mg/L |
| 04/30/2025 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 77.4 mg/L |
| 04/30/2025 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 392 mg/L |
| 05/31/2025 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 1040 mg/L |
| 05/31/2025 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 36.3 mg/L |
| 05/31/2025 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 278 mg/L |

| Date | Outfall | Parameter | Permit Limit | Sample Value |
|------|---------|-----------|--------------|--------------|
| 06/30/2025 | 001Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 31.7 mg/L |
| 06/30/2025 | 003Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 124 mg/L |
| 06/30/2025 | 003Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 124 mg/L |
| 06/30/2025 | 003Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 06/30/2025 | 003Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |
| 06/30/2025 | 004A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 102 mg/L |
| 06/30/2025 | 004A | Oil & Grease Daily Maximum | 15 mg/L | 18.2 mg/L |
| 06/30/2025 | 004A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 411 mg/L |
| 06/30/2025 | 006A | Carbon, tot organic [TOC] Daily Maximum | 50 mg/L | 74.6 mg/L |
| 06/30/2025 | 006A | Oil & Grease Daily Maximum | 15 mg/L | 22.9 mg/L |
| 06/30/2025 | 006A | Oxygen demand, chem. [high level] [COD] Daily Maximum | 125 mg/L | 280 mg/L |
| 06/30/2025 | 008Q | Oil & Grease Daily Maximum | 15 mg/L | 33.2 mg/L |
| 06/30/2025 | 102Q | Coliform, fecal general Daily Maximum | 400 #/100mL | 1000 #/100mL |
| 06/30/2025 | 102Q | Coliform, fecal general Monthly Average Geometric | 200 #/100mL | 1000 #/100mL |
| 06/30/2025 | 102Q | Solids, total suspended Daily Maximum | 45 mg/L | 60 mg/L |
| 06/30/2025 | 102Q | Solids, total suspended Monthly Average | 30 mg/L | 60 mg/L |
| 06/30/2025 | 105Q | BOD, 5-day, 20 deg. C Daily Maximum | 45 mg/L | 58.1 mg/L |
| 06/30/2025 | 105Q | BOD, 5-day, 20 deg. C Monthly Average | 30 mg/L | 58.1 mg/L |

**Key to Table 1:**
"Q" means quarterly Discharge Monitoring Report
"A" means monthly Discharge Monitoring Report
"deg. C" is degrees Celsius
"SU" is Standard Units
"mg/L" is milligrams per liter
"#/100mL" is number of colonies per 100 milliliters

**TABLE 2: Sheen Reported on Daily Visual Logs**

| Date | Outfall(s) |
|------|------------|
| 5/3/2022 | 004 |
| 5/4/2022 | 004 |
| 5/5/2022 | 004 |
| 5/6/2022 | 004 |
| 5/9/2022 | 004 |
| 5/10/2022 | 002, 004 |
| 5/12/2022 | 002, 004 |
| 5/13/2022 | 002, 004 |
| 5/16/2022 | 004 |
| 5/17/2022 | 004 |
| 5/18/2022 | 004 |
| 5/23/2022 | 002, 004 |
| 5/24/2022 | 004 |
| 5/25/2022 | 002, 004, 006 |
| 5/26/2022 | 002, 004, 006 |
| 5/27/2022 | 002, 004 |
| 5/31/2022 | 002, 004 |
| 6/1/2022 | 002, 004 |
| 6/2/2022 | 002, 004 |
| 6/3/2022 | 002, 004 |
| 6/6/2022 | 002, 004 |
| 6/7/2022 | 002, 004 |
| 6/8/2022 | 004 |
| 6/10/2022 | 002, 004, 006 |
| 6/13/2022 | 002, 004 |
| 6/14/2022 | 002, 004 |
| 6/15/2022 | 002, 004 |
| 6/16/2022 | 002, 004 |
| 6/17/2022 | 002, 004 |
| 6/20/2022 | 004 |
| 6/21/2022 | 004 |
| 6/27/2022 | 002, 004, 006 |
| 6/28/2022 | 002, 004, 006 |
| 6/29/2022 | 002, 004, 006 |
| 6/30/2022 | 002, 004, 006 |
| 7/1/2022 | 002, 004, 006 |
| 7/5/2022 | 002 |
| 7/6/2022 | 002, 004 |
| 7/7/2022 | 002, 004 |
| 7/8/2022 | 002, 004 |

| Date | Outfall(s) |
|---|---|
| 7/11/2022 | 002, 004 |
| 7/12/2022 | 002, 004 |
| 7/13/2022 | 002, 004 |
| 7/14/2022 | 002, 004 |
| 7/15/2022 | 002, 004 |
| 7/18/2022 | 004 |
| 7/19/2022 | 004 |
| 7/20/2022 | 004, 006 |
| 7/21/2022 | 004, 006 |
| 7/22/2022 | 002, 004, 006 |
| 7/25/2022 | 002, 004 |
| 7/26/2022 | 004 |
| 7/27/2022 | 004 |
| 7/28/2022 | 002 |
| 7/29/2022 | 002 |
| 8/1/2022 | 002 |
| 8/2/2022 | 002 |
| 8/2/2022 | 004 |
| 8/3/2022 | 002, 004 |
| 8/4/2022 | 002, 004, 005 |
| 8/5/2022 | 002, 004, 005 |
| 8/8/2022 | 002, 004, 005 |
| 8/9/2022 | 002, 004 |
| 8/10/2022 | 002, 004, 005, 006 |
| 8/11/2022 | 002, 004, 005, 006 |
| 8/12/2022 | 002, 004, 005, 006 |
| 8/15/2022 | 002, 004 |
| 8/16/2022 | 002, 004 |
| 8/17/2022 | 002, 004 |
| 8/19/2022 | 004 |
| 8/22/2022 | 002, 004, 006 |
| 8/23/2022 | 002, 004 |
| 8/24/2022 | 002, 004 |
| 8/25/2022 | 002, 004 |
| 8/26/2022 | 002, 004 |
| 8/29/2022 | 002, 004, 005, 006, 008 |
| 8/30/2022 | 002, 004 |
| 8/31/2022 | 002, 004 |
| 9/1/2022 | 002, 004, 006 |
| 9/2/2022 | 002, 004, 005 |
| 9/6/2022 | 002, 004 |
| 9/7/2022 | 002, 004 |

| Date | Outfall(s) |
|------|-----------|
| 9/8/2022 | 002, 004 |
| 9/9/2022 | 002, 004 |
| 9/12/2022 | 002, 004 |
| 9/13/2022 | 002, 004, 005 |
| 9/14/2022 | 002, 004 |
| 9/15/2022 | 002, 004 |
| 9/16/2022 | 002, 004 |
| 9/19/2022 | 002, 004 |
| 9/20/2022 | 002, 004 |
| 9/21/2022 | 002, 004 |
| 9/22/2022 | 002, 004 |
| 9/23/2022 | 002, 004 |
| 9/26/2022 | 002, 004 |
| 9/27/2022 | 002, 004 |
| 9/28/2022 | 002, 004 |
| 9/29/2022 | 002, 004 |
| 9/30/2022 | 002, 004 |
| 10/3/2022 | 002, 004 |
| 10/4/2022 | 002, 004 |
| 10/5/2022 | 002, 004 |
| 10/6/2022 | 002, 004 |
| 10/7/2022 | 002, 004 |
| 10/10/2022 | 002, 004 |
| 10/11/2022 | 002, 004 |
| 10/12/2022 | 002, 004 |
| 10/13/2022 | 002, 004 |
| 10/14/2022 | 002, 004 |
| 10/17/2022 | 002, 004 |
| 10/18/2022 | 002, 004 |
| 10/19/2022 | 002, 004 |
| 10/20/2022 | 002, 004 |
| 10/21/2022 | 002, 004 |
| 10/24/2022 | 002, 004 |
| 10/25/2022 | 002, 004 |
| 10/26/2022 | 002, 004 |
| 10/27/2022 | 002, 004 |
| 10/28/2022 | 002, 004 |
| 12/7/2022 | 002, 004 |
| 12/8/2022 | 002, 004 |
| 12/9/2022 | 002, 004 |
| 12/10/2022 | 002, 004 |
| 12/11/2022 | 002, 004 |

| Date | Outfall(s) |
|---|---|
| 12/12/2022 | 002, 004 |
| 12/13/2022 | 002, 004 |
| 12/14/2022 | 002, 004 |
| 12/15/2022 | 002, 004 |
| 12/16/2022 | 002, 004 |
| 2/2/2023 | 002, 004, 005, 006, 008 |
| 3/23/2023 | 004 |
| 3/28/2023 | 002, 004, 005, 006, 008 |
| 4/10/2023 | 002, 004, 006 |
| 4/28/2023 | 002, 004 |
| 5/2/2023 | 004 |
| 5/5/2023 | 002, 004, 006, 008 |
| 5/8/2023 | 002, 008 |
| 5/10/2023 | 002, 004, 008 |
| 5/11/2023 | 004, 006, 008 |
| 5/12/2023 | 002, 004, 006, 008 |
| 5/9/2023 | 008 |
| 5/15/2023 | 004, 008 |
| 5/16/2023 | 004, 008 |
| 5/18/2023 | 004, 008 |
| 5/19/2023 | 008 |
| 5/23/2023 | 004, 008 |
| 5/24/2023 | 004, 008 |
| 5/25/2023 | 004, 008 |
| 5/26/2023 | 004, 008 |
| 5/22/2023 | 008 |
| 6/7/2023 | 004, 008 |
| 6/8/2023 | 004, 008 |
| 6/9/2023 | 004, 008 |
| 6/5/2023 | 008 |
| 6/6/2023 | 008 |
| 6/12/2023 | 008 |
| 6/13/2023 | 008 |
| 6/14/2023 | 008 |
| 6/15/2023 | 008 |
| 6/16/2023 | 008 |
| 6/19/2023 | 006, 008 |
| 6/20/2023 | 006, 008 |
| 6/21/2023 | 006, 008 |
| 6/22/2023 | 008 |
| 6/23/2023 | 008 |
| 6/26/2023 | 006, 008 |

| Date | Outfall(s) |
|---|---|
| 6/27/2023 | 008 |
| 6/28/2023 | 008 |
| 6/29/2023 | 008 |
| 6/30/2023 | 008 |
| 7/3/2023 | 008 |
| 7/5/2023 | 008 |
| 7/6/2023 | 008 |
| 7/7/2023 | 008 |
| 7/19/2023 | 008 |
| 7/20/2023 | 008 |
| 7/21/2023 | 008 |
| 7/24/2023 | 008 |
| 7/25/2023 | 008 |
| 7/26/2023 | 008 |
| 7/31/2023 | 008 |
| 8/1/2023 | 008 |
| 8/2/2023 | 008 |
| 8/3/2023 | 008 |
| 8/4/2023 | 008 |
| 8/7/2023 | 008 |
| 8/8/2023 | 008 |
| 8/9/2023 | 008 |
| 8/10/2023 | 008 |
| 8/11/2023 | 008 |
| 8/14/2023 | 008 |
| 8/15/2023 | 008 |
| 8/16/2023 | 008 |
| 8/23/2023 | 008 |
| 8/24/2023 | 008 |
| 8/25/2023 | 008 |
| 8/31/2023 | 002 |
| 8/28/2023 | 008 |
| 8/29/2023 | 008 |
| 9/5/2023 | 008 |
| 9/25/2023 | 008 |
| 9/26/2023 | 008 |
| 9/27/2023 | 008 |
| 9/28/2023 | 008 |
| 9/29/2023 | 008 |
| 10/2/2023 | 008 |
| 10/3/2023 | 008 |
| 10/4/2023 | 008 |

| Date | Outfall(s) |
|---|---|
| 10/5/2023 | 008 |
| 10/11/2023 | 002, 004, 006, 008 |
| 10/9/2023 | 008 |
| 10/10/2023 | 008 |
| 10/12/2023 | 008 |
| 10/13/2023 | 008 |
| 10/17/2023 | 002, 004, 006, 008 |
| 10/30/2023 | 008 |
| 10/31/2023 | 008 |
| 11/1/2023 | 008 |
| 1/23/2024 | 004, 006 |
| 7/22/2024 | 004 |
| 7/23/2024 | 004 |
| 7/24/2024 | 004 |
| 7/25/2024 | 004 |
| 11/7/2024 | 002 |

**TABLE 3: Oil, Oily Materials, or Dye Discharge Descriptions**

| Incident | Date | Outfall(s) | Description |
|---|---|---|---|
| 205137 | 10/3/2021 | 002 | Approximately 15 gallons of lubricant oil discharged from Outfall 002 to the Highway ("Hwy") 51 roadside ditch. |
| 208483 | 5/3/2022 | 004 | Less than 5 gallons of oil was released through Outfall 004 to the Hwy 51 roadside ditch while the Facility was power washing inside of the Facility to clean up past spills. |
| 211215 | 10/25/2022 | 004 | Approximately 30 gallons of petroleum products and Locomotive Cleaner were released to Hwy 51 roadside ditch. Defendant was pressure washing and using Locomotive Cleaner (degreaser). Defendant washed petroleum products and Locomotive Cleaner into Outfall 004 where a vacuum truck was going to collect the material. Defendant washed material into the internal ditch the day prior. A rainfall event caused material to overflow from the outfall. |
| 212554 | 1/30/2023 | 002, 004, & 006 | On Feb. 2, 2023, LDEQ's inspector observed sheen and hydrocarbon materials leaving the Facility from Outfalls 002, 004, and 006. Hydrocarbon materials were observed in the Hwy 51 ditch in many locations. Oil coated vegetation was observed in the Hwy 51 roadside ditch downstream from Outfall 006 to where the ditch crosses under Hwy 51. Hydrocarbon booms were observed near the Outfalls and throughout the ditch. A representative of Defendant stated that approximately two weeks prior, the company increased pressure washing activities. |
| 212829 | 2/20/2023 | 004 | LDEQ's inspector observed a rainbow sheen leaving Outfall 004, entering the Hwy 51 roadside ditch, and flowing south. Downstream from the Facility, the roadside ditch/culvert had a visible rainbow sheen, which was observed on the water in the Hwy 51 west side roadside ditch. Liquids consistent with hydrocarbons were observed pooled in the Hwy 51 roadside ditch approximately 50 yards south of where the sheen was observed at Outfall 004. The liquid was black, floating on the surface of the water, and had a petroleum smell. In addition, an orange fluid consistent with emulsified petroleum product was also present in this area. Multiple black oily saturated absorbent booms were observed throughout the roadside ditch. |

| Incident | Date | Outfall(s) | Description |
|---|---|---|---|
| 220230 | 7/21/2024 | 004 | Approximately 950 gallons of hydraulic oil was discharged from Outfall 004 to the Hwy 51 roadside ditch. The release occurred due to a burst in a railcar transfer line in the Tank Farm 7 area. While cleaning the spill, rainfall caused the Facility's oil-water separator to overflow. Oil migrated approximately 200 yards south down the Hwy 51 roadside ditch, thence into a creek, thence into a private pond. Floating oil was observed in the Hwy 51 roadside ditch. Approximately 14,000 gallons of oily water were removed from the pond via vacuum truck. |
| 220796 | 8/30/2024 | 004 | Navilan Yellow 73 dye discharged from Outfall 004 to the Hwy 51 roadside ditch. The dye migrated south, then east, to a wooded drainage area/pond on private property. The release was caused by a 55-gallon drum falling from a forklift during a heavy rain event. |