**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-2271** |
| **THE STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF ENVIRONMENTAL QUALITY AND LOUISIANA ATTORNEY GENERAL, LIZ MURRILL** | **SECTION: "J" (4)** |

**ORDER AND REASONS**

Before the Court is **Motion to Intervene as of Right. R. Doc. 11.** The Motion is opposed. R. Doc. 12. A Reply Memorandum was also filed. R. Doc. 16. The United States and the State of Louisiana does not oppose the citizen's group motion. R. Doc. 15. The matter was heard without oral argument.

## I. Introduction

### A. Factual Summary

This case was filed by the State and the United States on behalf of the United States Environmental Protection Agency ("EPA") and through the State of Louisiana through the Louisiana Department of Environmental Quality (L.D.E.Q.) alleging Clean Water Act violations. R. Doc. 1. On August 22, 2025, an explosion and fire occurred at Defendant's lubricant oil manufacturing facility, and it engulfed above-ground storage tanks and other areas of the Facility that stored oil and chemical products. *Id.* The fire burned for approximately two weeks until it was fully extinguished. *Id.* As a result of this catastrophic event, oil and other pollutants flowed from the Facility into adjacent water bodies and the Tangipahoa River. *Id.*

Once in the river, the pollutants allegedly traveled approximately 47 miles downstream. EPA and L.D.E.Q., along with other agencies, responded to the incident to reduce risks to public

health and the environment. *Id.* Following the incident, EPA reviewed Defendant's required oil spill prevention and response plans. EPA determined that those plans were insufficient. *Id.* Additionally, for years prior to the incident, Defendant repeatedly failed to comply with its Louisiana Pollutant Discharge Elimination System permit, in violation of the Clean Water Act, and Louisiana Revised Statute ("La. R.S.") 30:2075 and La. R.S. 30:2076. *Id.* Plaintiffs seek an order holding Smitty's Supply, Inc. ("SSI") accountable for unlawfully polluting the Nation's and the State's waters, and to require Defendant to take all appropriate measures to prevent future spills or discharges. *Id.*

The United States seeks relief related to Defendant's unauthorized discharge associated with the incident. The Plaintiffs also contend that the Defendant's inadequate spill prevention and response plans, and numerous permit violations render it liable for penalties. The State presents analogous state law claims, as well as state-only claims for unauthorized discharges and certain permit violations.

Since the filing of the Complaint in November 2025, SSI has not been required by the government to answer the complaint. According to SSI, this is an example that the posture of the matter reflects the parties' mutual commitment to exploring resolution. R. Doc. 12.

**B. The Subject Motion Proposed Intervention**

The subject motion was filed by the Louisiana Environmental Action Network (LEAN) and Northshore Riverwatch (NSRW) pursuant to the Fed. Rules of Civ. Proc. 24 (a)(1). *Id.* LEAN and NSRW contend that they have a right to intervene in the instant suit pursuant to federal statute to protect their members' interests. R. Doc. 11-1. They have alleged that members are harmed and continue to be harmed by the Defendant's violations. *Id.* The requested relief of penalties and injunction would deter further violations and remedy or at least lessen the harm they have suffered and continue to suffer. *Id.*

LEAN and NSRW have alleged that their purposes include protecting the waters of the state and ensuring regulations aimed at securing such protection are complied with and enforced. *Id.* The members of LEAN and NSRW contend that they are not seeking damages or any other relief that would require the direct participation of the members. *Id.*

SSI opposes the intervention of both LEAN and NSRW and contends that the Government has commenced a diligent enforcement action. R. Doc. 12. SSI contends that the motion is deficient because (1) the proposed intervenors failed to establish an associational standing because they fail to identify a single member by name, (2) the proposed intervention impermissibly asserts new claims and factual allegations regarding Louisiana Scenic Rivers Act, La. R.S. 56:1847, and (3) if intervention were permitted, the Court should limit its scope to prohibit LEAN and NSRW from interfering with the sovereign's prosecutorial discretion and settlement authority and subject to Rule 24(a)(2) or Rule 24(b).

Plaintiff's Reply in Support of Intervention contends that (1) they are not required to identify their members who own oiled properties and that the Defendant can test standing later; (2) Plaintiffs contend that their allegations regarding post-accident conduct are designed to address whether the Defendant mitigated the severity of the harm it caused; and (3) Defendant seeks to restrict them to mere spectators rather than allow them to intervene despite the governments laxity in enforcing the Act. Plaintiffs, United States and State of Louisiana, do not oppose the intervention, but reserve the right to seek to limit intervenors' participation if either deem it appropriate in the future.

## II. <u>Standard of Review</u>

Under Rule 24(a), the Court *must* permit anyone to intervene on timely motion if they have an unconditional right to intervene by a federal statute or if they claim an interest relating to the property or transaction at issue and the movant is so situated that disposing of the action would impair or impede the movant's ability to protect its interest, unless existing parties adequately

represent that interest. FED. R. CIV. PRO. 24(a)(2). The movant in a motion to intervene bears the burden of establishing their right to intervene, but federal jurisprudence provides that Rule 24 is to be liberally construed with any doubt resolved in favor of the intervenor. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage, Comm'n*, 834 F.3d 562 (5th Cir. 2016).

Where the movant does not have an unconditional right to intervene under a federal statute, the movant must satisfy a four-part test to intervene as of right: (1) the motion to intervene must be timely, (2) the movant must have an interest relating to the property or transaction which is the subject of the action, (3) the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest, and (4) the movant's interest must be inadequately represented by the existing parties to the suit. *Wal-Mart Stores, Inc.*, 834 F.3d at 565.

Additionally, Fifth Circuit jurisprudence has established four factors that the Court must consider when evaluating the timeliness of a motion to intervene:

> "(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely."

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

## III. Analysis

### A. CWA-Section 505

The Louisiana Environmental Action Network (LEAN) and Northshore Riverwatch (NSRW) Intervenors allege that the Clean Air Act gives them a statutory right to intervene. The proposed plaintiffs in intervention contend that their members were directly and remain impacted

by the Defendant's violation. They allege that their concerns were communicated with the Louisiana Department of Environmental Quality to no avail and therefore they seek to intervene in this suit.

Smitty's Supply contends that the subject motion should be denied or granted only subject to substantial limitations. R. Doc. 12. According to SSI, the intervenors have failed to establish associational standing because they have not identified a single member by name, attached a declaration, or described any member's 'concrete particularized injury.' *Id.* Further, SSI contends that it is impermissible for the proposed interveners to assert new factual allegations and relief pursuant to La. R.S. 56:1847, an ancillary claim for which no federal jurisdiction exists.

Under Section 505 of the Clean Water Act,[1] private citizens may bring suits to enforce the Act and its implementing regulations, including storm water discharge requirements,[2] water quality standards,[3] and NPDES permit conditions.[4] Citizens may sue the EPA to compel enforcement of a nondiscretionary duty of the agency[5] or may sue a violator directly to enjoin a violation and/or seek the assessment of civil penalties.[6] If the citizen suit plaintiff is a "prevailing or substantially prevailing party" in the outcome of the litigation, the plaintiff may be awarded litigation costs,

---

[1] 33 U.S.C.A. § 1365.

[2] *Mississippi River Revival, Inc. v. City of Minneapolis, Minn.*, 319 F.3d 1013, 55 Env't. Rep. Cas. (BNA) 2047, 33 Envtl. L. Rep. 20143 (8th Cir. 2003). *See also Conservation Law Found. v. Hannaford Bros. Co*., 327 F. Supp. 2d 325 (D. Vt. 2004) (in environmental organization's citizen suit alleging the illegal discharge of pollutants through a shopping plaza's storm sewer system, court held that shopping plaza did not violate CWA by failing to obtain NPDES permit for its stormwater discharges since neither EPA nor state environmental agency had exercised residual designation authority to require a permit).

[3] *Cmty. Ass'n for Restoration of Env't (CARE) v. Sid Koopman Dairy*, 54 F. Supp. 2d 976, 48 Env't. Rep. Cas. (BNA) 1763 (E.D. Wash. 1999). *See also Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A*., 386 F.3d 1070, 59 Env't. Rep. Cas. (BNA) 1166, 34 Envtl. L. Rep. 20109 (11th Cir. 2004).

[4] *P.R. Campers' Ass'n. v. P.R. Aqueduct and Sewer Authority*, 219 F. Supp. 2d 201, 33 Envtl. L. Rep. 20033 (D.P.R. 2002) (campers' association brought citizen suit seeking injunctive relief and civil penalties for alleged NPDES permit violations in connection with sewer authority's operation of two wastewater treatment plants). *See also American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 59 Env't. Rep. Cas. (BNA) 1481, 34 Envtl. L. Rep. 20129, 2004 Fed. App. 0377P (6th Cir. 2004).

[5] *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc.*, 386 F.3d 1070, 59 Env't. Rep. Cas. (BNA) 1166, 34 Envtl. L. Rep. 20109 (11th Cir. 2004).

[6] *See also Molokai Chamber of Com. v. Kukui (Molokai), Inc.*, 891 F. Supp. 1389, 26 Envtl. L. Rep. 20303 (D. Haw. 1995) (finding that commencement of construction without a permit constituted a continuing violation even after the construction ceased because storm water discharges continued).

including reasonable attorney and expert witness fees, if the court determines that such award is appropriate.[1] Commencement of a citizen suit against an alleged violator is not allowed, however, if the government is already diligently prosecuting the alleged violation.[2] In addition, the alleged violation must be a continuing one and not a wholly past violation.[3]

While the applicant has the burden of demonstrating inadequate representation of his interest, this burden is "minimal", and the applicant need only show that representation may be inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). There is a presumption of adequate representation when the applicant has the same "ultimate objective" an existing party to the suit. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). This presumption generally may only be overcome by showing of "adversity of interests, collusion, or nonfeasance on the part of the existing party." *Id.* However, it is recognized in this circuit that governmental entities, which must concern themselves with the broader public interest, often cannot adequately represent the narrow financial interests of a private party. *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994); *Sierra Club v. Glickman,* 82 F.3d 106, 110 (5th Cir. 1996).

Given the LDEQ and the Attorney General's interest are more extensive, it cannot be said that the proposed plaintiffs in intervention share the same ultimate objective. Indeed, a governmental agency's generalized interests are alone sufficient reason to conclude that interests of the agency and private party are not similar and necessarily aligned. Consequently, LEAN and NSRW have demonstrated inadequate representation of their interests by the parties, and they are

---

[1] 33 U.S.C.A. § 1365(d).

[2] 33 U.S.C.A. § 1365(b)(2).

[3] *American Canoe Ass'n v. Murphy Farms*, 412 F.3d 536, 60 Env't. Rep. Cas. (BNA) 1822, 35 Envtl. L. Rep. 20129 (4th Cir. 2005) (environmental groups established likelihood of recurrence of illegal discharge of swine waste by hog farms as required for jurisdiction under CWA's citizen-suit provision).

therefore entitled to intervene in this CWA. The Court will next address the proposed state law claim.

**B. Louisiana Scenic Rivers Act, La. R.S. 56:1847 claim**

LEAN and NSRW also seek to assert a claim pursuant to Louisiana Scenic Rivers Act, La. R.S. 56:1847 and 56:1849. R. Doc. 11-3. LEAN and NSRW seek to allege that the Tangipahoa River is a designated Scenic River from the Mississippi state line to Interstate 12. *Id.* LEAN and NSRW seek to allege that SSI was not permitted to engage in activities that result in ecological degradation without a permit from the LDWF and that SSI had no such permit to discharge.

SSI contends LEAN and NSRW seek to intervene to expand the scope of the litigation to include the Louisiana Scenic Rivers Act, La. R.S. 56:1847 and 56:1849 alleging that SSI was required to obtain a permit from the Louisiana Department of Wildlife and Fisheries. R. Doc. 12. SSI points out that this claim arises under a different Louisiana statute which is enforced by a different state agency, LDWF, and invokes a wholly distinct regulatory regime.

Rule 24(a) of the Federal Rules of Civil Procedure provides that on timely motion, the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) as matter of right if it: (1) timely files an application, (2) has an interest in the subject matter of the action, (3) shows that the disposition of the action may impair or impede the protection of that interest, and (4) shows that the existing parties to the action will not adequately represent that interest. *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002) (quoting *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 756 (5th Cir. 1995)). The applicant bears the burden of establishing an entitlement to intervene and must satisfy all of the above requirements. *Edwards*, 78 F.3d at 999.

The burden of establishing inadequate representation is on the applicant for intervention. *See Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir.1994); Espy, 18 F.3d at 1207. The Supreme Court of the United States has decided that “[this] requirement . . . is satisfied if the applicant shows that representation of his interest ‘may be’ inadequate; and the burden of making that showing should be treated as minimal.” *Trbovich*, 404 U.S. at 538 n.10.

Although the applicant's burden of showing inadequate representation is minimal, “it cannot be treated as so minimal as to write the requirement completely out of the rule.” *Cajun Elec. Power Coop. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 120 (5th Cir. 1991) (quoting *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir.1984)). Accordingly, our jurisprudence has created two presumptions of adequate representation. First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity. *Texas v. U.S.*, 805 F.3d 653 (5th Cir. 2015).

To overcome this presumption, the applicant must show “that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].” *Hopwood*, 21 F.3d at 605. This presumption, and the heightened showing required to overcome it, is restricted, however, to those suits involving matters of sovereign interest. *Id.* The State of Louisiana through the Louisiana Department of Environmental Quality in the present action is appearing as a sovereign and therefore the presumption of adequate representation arises.

The second presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption. *Franklin Parish Sch. Bd.*, 47 F.3d at 757 (citing *Kneeland v. Nat’l Collegiate Athletic Ass’n*, 806 F.2d 1285, 1288 (5th Cir. 1987)).

Factors (1) and (2) are not contested in this matter. The proposed intervention seeks a judgment against SSI and to award the Louisiana Department of Environmental Quality its unpaid response costs and civil penalties not exceeding $32,500 for each day of violation. Further, LEAN and NSRW seek as an additional award for the intentional discharge or disposal, a penalty of not more than $1,000,000 pursuant to La. R.S. 30:2025(E). R. Doc. 11-3. Further, the proposed intervention seeks an award of their costs. *Id.* Additionally, they seek an order requiring SSI to take appropriate action to prevent spills from its facility into waters of the United States in compliance with Facility Response Plan and SPCC regulations and the Clean Water Act. *See id.* ¶E, p. 7.

The proposed intervention seeks to allege that SSI continued to discharge contaminated water to the Tangipahoa River in violation of the STED-G permit, LAG420176. *Id.* at p. 5. Intervenors have gathered months of photographic and video evidence showing persistent oil sheens, discolored water, sludge accumulation, and noxious odors along the discharge pathway. *Id.* These observations were made during a period of extremely dry conditions, with less than one inch of rainfall during February 2026 recorded at Hammond Airport, indicating that the petroleum sheens are not the result of stormwater runoff nor mobilization of historic contamination. *Id.* Defendant is discharging untreated or inadequately treated water in violation of its permits. *Id.*

The proposed intervenors also seek to allege that Defendant has obtained four "containment ponds" in which it stores contaminated water from its clean-up operations and storm water. *Id.* Defendant discharges directly from these ponds into the ditches that take the water to the Tangipahoa River. *Id.* This is not a permitted outfall in either of Defendant's permits and is therefore prohibited and in violation of the law. *Id.*

The proposed complaint also seeks to allege that pursuant to La. R.S. § 56:1847(4), the Tangipahoa River is a designated Scenic River from the Mississippi state line to Interstate 12. *Id.* The Scenic Rivers Act prohibits anyone from conducting activities with the potential for significant

ecological degradation unless they have first obtained a permit from the Louisiana Department of Wildlife and Fisheries (LDWF). *Id.* According to the proposed intervention, the intervenors seek to allege that SSI has not applied for nor obtained a permit to discharge into the Tangipahoa from the LDWF, in violation of La. R.S. § 56:1849.

Although this statutory provision is not identified in the complaint, the State of Louisiana seeks to hold SSI to account for the results of their unauthorized discharge, specifically that the waters of the state were not free from floating debris, scum, oil, or other matter that formed nuisances and negatively impacted the aesthetics of the waters of the state. R. Doc. 1. The State alleges that SSI's unauthorized discharge injured, was toxic to, or produced demonstrated adverse physiological responses in animals, fish, shellfish, wildlife, or plants in violation of other state statutes. *Id.* The State also alleges that the discharge forced the closure of a portion of the Tangipahoa River to boating on or about August 24, 2025, and for some time thereafter. *Id*. The State alleges that boating, which is a designated secondary contact usage of this water body, was hindered by the presence of free or floating oil. *Id.*

While the statutory reference is different, the claim sought by the State is to address the illegal discharge of oil by SSI. There is no evidence by either LEAN or NSRW that the state representation is or would be inadequate nor is there evidence that their interests would not be protected. Therefore, the Court finds that LEAN and NSRW have failed to establish either entitlement to intervene pursuant to Fed. Rule Civ. Pro. 24(a) or 24(b).

Accordingly,

## IV. <u>Conclusion</u>

**IT IS ORDERED** that LEAN and NSRW **Motion for Leave to File Complaint for Intervention (R. Doc. 11)** is **GRANTED IN PART AND DENIED IN PART.**

**IT IS GRANTED** to the extent that LEAN and NSRW seek to intervene pursuant to the CLEAR WATER ACT.

**IT IS DENIED** to the extent that LEAN and NSRW seek to intervene to assert a claim pursuant to Louisiana Scenic Rivers Act, La. R.S. 56:1847 and 56:1849.

New Orleans, Louisiana, this 14th day of September 2026

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**